**David WASKEL and Stanley Bowman, Plaintiffs–Appellants,**

v.

**GUARANTY NATIONAL CORPORATION, Guaranty National Insurance Company, and Landmark American Insurance Company, Defendants–Appellees.**

No. 99CA1795.

Colorado Court of Appeals, Div. II.

Oct. 26, 2000.

Certiorari Denied May 21, 2001.[*]

[*] Justice RICE does not participate.

---

Shughart Thomson & Kilroy, P.C., Joseph J. Mellon, Denver, CO, for Plaintiffs–Appellants.

Baldwin & Brown, P.C., Robert M. Baldwin, Ellen Rubright Ivy, Denver, CO, for Defendants–Appellees.

Opinion by Judge VOGT.

Plaintiffs, David Waskel and Stanley Bowman, appeal a summary judgment in favor of defendants, Guaranty National Corp. (GNC), Guaranty National Insurance Co. (GNIC), and Landmark American Insurance Co. (LAIC), on their claims for indemnification and damages. We affirm in part, reverse in part, and remand with directions.

Between 1979 and 1992, plaintiffs were associated with the defendant companies in various capacities. At the time their employment ended in 1992, plaintiff Bowman was a claims supervisor and plaintiff Waskel was vice-president of claims for defendant GNIC, a subsidiary of GNC and an affiliate of LAIC. Waskel was also an officer of GNC and LAIC.

As employees of GNIC, plaintiffs also handled claims under insurance policies issued by LAIC. In that capacity, they were involved in the decision to deny coverage on a claim against a trucking company insured by LAIC.

After leaving GNIC in 1992, plaintiffs began working for Scottsdale Insurance Co. While reviewing Scottsdale's closed files, they determined that Scottsdale might have a claim for reimbursement from GNIC and LAIC for sums it had paid in settlement of the claim asserted against the LAIC-insured trucking company. Their determination led to two lawsuits, which were ultimately resolved in favor of GNIC and LAIC.

Thereafter, GNIC and LAIC filed suit against Bowman, Waskel, and Scottsdale, alleging, as pertinent here, that Bowman and Waskel had breached their fiduciary duties and duties of loyalty to them. The jury found that both individuals breached fiduciary duties and duties of loyalty and that GNIC and LAIC suffered damages; however, it also found that the individuals' actions were not the cause of the companies' damages. Thus, no money judgment was entered against Bowman and Waskel. The judgment was affirmed on appeal, *see Guaranty National Insurance Co. v. Scottsdale Insurance Co.,* (Colo.App. No. 97CA1571, August 26, 1999) (not selected for official publication), and the supreme court denied certiorari.

Citing various provisions from defendants' bylaws, the GNC charter, and Waskel's severance agreement, plaintiffs requested that defendants indemnify them for their attorney fees and other expenses incurred in connection with the lawsuit brought against them by GNIC and LAIC. When defendants refused, plaintiffs filed the instant action, seeking damages for defendants' refusal to indemnify them and asserting claims for additional damages under theories of outrageous conduct and malicious prosecution.

Defendants moved for summary judgment on all claims. Plaintiffs responded by cross-moving for partial summary judgment on the indemnification issue and requesting additional time to conduct discovery pursuant to C.R.C.P. 56(f) on the claims of malicious prosecution and outrageous conduct.

Finding that there were no genuine issues of material fact and that there was "no legal basis requiring Defendants to indemnify Plaintiffs," the trial court granted defendants' motion for summary judgment, denied plaintiffs' cross-motion, and entered judgment in favor of defendants without ruling on plaintiffs' C.R.C.P. 56(f) request.

## I.

Plaintiffs contend that, under the terms of the corporate documents and under Colorado statutes, they were entitled to indemnification as a matter of law, and that the trial court erred in concluding to the contrary. We agree.

■ We review a summary judgment *de novo,* applying the same standards that govern the trial court's determination. Summary judgment is warranted only when there is a clear showing that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988); C.R.C.P. 56(c).

Here, there is no disputed issue of fact regarding the provisions of the corporate documents that bear on plaintiffs' claims for indemnification. Among the provisions on which plaintiffs rely are the following:

[GNC Charter] X. *INDEMNIFICATION:* The Corporation shall, to the fullest extent now or hereafter permitted by law, indemnify and make whole any person who was or is a party ... to any ... action, suit or proceeding ... by reason of the fact that he is or was a director, officer, or employee of the Corporation or a subsidiary of the Corporation, ... if he or she acted in good

faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the Corporation.

. . . .

[GNC Bylaws] 8.3. *Indemnity for Successful Defense of Certain Matters.* Notwithstanding the other provisions of this Article . . . , to the extent that a director, officer or employee of the Corporation has been wholly successful on the merits or otherwise in defense of any action, suit or proceeding [brought by third parties or by or in the right of the Corporation, by reason of the fact that he or she is or was a director, officer, or employee], he or she shall be indemnified and made whole against expenses (including attorneys' fees) actually and reasonably incurred by him or her in connection therewith.

Other provisions of the GNC bylaws extend indemnification to the employees of GNC's subsidiaries and provide that indemnification under the bylaws shall be "to the fullest extent permitted by applicable law." Waskel's severance agreement states that GNC will indemnify him, to the same extent as its directors and executive officers generally, for expenses sustained by him in connection with any action to which he is made a party "by reason of . . . having been . . . [an] officer of GNC or any subsidiary or affiliated company or by reason of any action . . . taken by [him] on behalf of GNC or any subsidiary or affiliated company."

Relying on these and other provisions, as well as on the Colorado statutes discussed below, plaintiffs assert that, inasmuch as they were sued for the breach of duties that arose solely by reason of their employment relationship with defendants and prevailed on all claims against them in that action, they are entitled to indemnification for the expenses they incurred in defending against those claims.

Defendants argue that plaintiffs do not qualify for mandatory indemnification within the meaning of the corporate documents and the Colorado statutes and that public policy prohibits indemnification for wrongful acts against one's own corporation.

A.

■ We first consider whether plaintiffs qualify for mandatory indemnification under Colorado law or the relevant corporate documents.

The Colorado Business Corporation Act, § 7–101–101, et seq., C.R.S.2000, includes provisions regarding both permissive and mandatory indemnification. Mandatory indemnification is addressed in § 7–109–103, C.R.S.2000, which provides:

> Unless limited by its articles of incorporation, a corporation *shall indemnify* a person who was *wholly successful, on the merits or otherwise,* in the defense of any proceeding to which the person was a party because the person is or was a director, against reasonable expenses incurred by him or her in connection with the proceeding. (Emphasis added.)

Section 7–109–107, C.R.S.2000, provides that a corporate officer is entitled to mandatory indemnification under § 7–109–103 to the same extent as a director and that a corporation may indemnify an employee, fiduciary, or agent to the same extent as a director.

Although § 7–109–103 permits a corporation to include in its articles of incorporation a provision placing limits on mandatory indemnification, defendants have not done so here. Rather, using the same language as that used in § 7–109–103, the GNC bylaws mandate indemnification in situations where a director, officer, or employee of the corporation has been "wholly successful on the merits or otherwise" in defense of an action brought by third parties or by or in the right of the corporation.

Plaintiffs contend that they were "wholly successful" in the previous litigation because they were not found liable on any claims and were in fact awarded their costs at the conclusion of the action. Defendants respond that parties who are found to have breached their duties to their corporations cannot be deemed wholly successful so as to entitle them to mandatory indemnification.

■ Most of the courts and commentators that have addressed this issue have interpreted "successful" as plaintiffs do.

The Colorado statutes at issue here are based on a pre 1994 version of the Model Business Corporation Act (MBCA). The official comment to MBCA § 8.52, which corresponds to § 7–109–103, states that a defendant is "wholly successful" "only if the entire proceeding is disposed of on a basis which does not involve a finding of liability." "Liability" is defined, for purposes of the indemnification provisions, as the "obligation ... to pay a judgment" or other sums. MBCA § 8.50(5); § 7–109–101(4), C.R.S.2000.

The MBCA comment also explains that the word "wholly" was added to avoid the result reached in a case finding entitlement to partial mandatory indemnification where the defendant was able to obtain the dismissal of some but not all counts of a criminal indictment. Further, the phrase "on the merits or otherwise" was intended to show that mandatory indemnification applies even where the defendant prevails because of procedural defenses, such as the statute of limitations, which are not related to the merits.

The courts have similarly recognized that entitlement to mandatory indemnification turns on whether the party seeking indemnification was successful in the sense that he or she did not have to pay a money judgment in the underlying litigation, and that such party's lack of good faith is irrelevant to the inquiry. *See Waltuch v. Conticommodity Services, Inc.,* 88 F.3d 87 (2d Cir.1996) (director who obtained settlement without any payment by him was "successful on the merits or otherwise;" "success" does not mean moral exoneration but, rather, escape from an adverse judgment or other detriment, for whatever reason); *Landmark Land Co. v. Cone,* 76 F.3d 553 (4th Cir.1996)(bank officers who were investigated for violating banking laws but not formally charged were entitled to mandatory indemnification under Louisiana law, even though they did not act in good faith), *cert. denied,* 519 U.S. 813, 117 S.Ct. 59, 136 L.Ed.2d 22 (1996); *Safeway Stores, Inc. v. National Union Fire Insurance Co.,* 64 F.3d 1282 (9th Cir.1995)(in class action brought by Safeway shareholders alleging breach of fiduciary duties, directors who admitted no liability and paid no money as part of settlement were "successful" and thus entitled to indemnification under Maryland law); *Fleischer v. Federal Deposit Insurance Corp.,* —— F.Supp. —— (D.Kan. 1998)(1998 U.S. Dist. Lexis 9821)(parties who prevailed on all claims against them in directors and officers lawsuit did not need to show they acted in good faith in order to qualify for mandatory indemnification); *B & B Investment Club v. Kleinert's, Inc.,* 472 F.Supp. 787 (E.D.Pa.1979)(director who paid no money as part of settlement of securities fraud claims was "successful" and thus entitled to mandatory indemnification).

Defendants attempt to distinguish *Waltuch* and other authorities relied on by plaintiffs on the basis that these cases did not involve wrongs by an officer, director, or employee against the corporation itself. However, the analysis employed in *Waltuch* has been applied in suits brought by corporate shareholders or corporate receivers alleging wrongs against the corporation, including breaches of fiduciary duty. *See Landmark Land Co. v. Cone, supra* (suit by receiver of failed bank against directors and officers for breach of fiduciary duties); *Safeway Stores, Inc. v. National Union Fire Insurance Co., supra* (class action by shareholders against directors, alleging breach of fiduciary duties); *Fleischer v. Federal Deposit Insurance Corp., supra* (suit by corporation's receiver alleging breach of fiduciary duty and negligence). Further, the mandatory indemnification statutes themselves make no distinction between the defense of suits brought by third parties and the defense of suits brought by or on behalf of the corporation.

We also disagree with defendants' contention that the cases are inapposite because the courts were construing indemnity statutes that required the defendant only to be "successful," not "wholly successful." As noted above, the word "wholly" in the mandatory indemnification provision was intended to address situations in which a defendant was found liable on some claims but not on others. That is not the situation presented here. We have found no cases that distinguish between successful and "wholly suc-

cessful" on the grounds argued by defendants.

Defendants urge us to adopt the reasoning of the Tenth Circuit in *Quark, Inc. v. Harley*, 141 F.3d 1185 (10th Cir.1998) (1998 U.S.App. Lexis 14146) (not selected for official publication). We agree with defendants that, since no published opinion has addressed mandatory indemnification under § 7–109–103, *Quark* may be considered for its persuasive value under 10th Cir.R. 36.3, which, in contrast to Colorado's appellate rules, expressly permits citation of unpublished opinions in these circumstances. However, we decline to adopt its reasoning or its conclusion.

In a single paragraph of a lengthy opinion addressing other issues, the Tenth Circuit concluded in *Quark* that a director who had been "found liable" for breach of fiduciary duty but had not been required to pay damages was not "wholly successful on the merits or otherwise" under § 7–109–103, and thus was not entitled to mandatory indemnification. In support of its conclusion, the court relied on Colorado case law holding that liability, not damages, controls the award of attorney fees under contractual fee-shifting provisions. However, the court does not appear to have considered the statutory definition of "liability" in § 7–109–101(4), which, as set forth above, states that "liability" for purposes of the corporate indemnification statutes means the "obligation ... to pay a judgment." Nor did the court refer to any authority specifically addressing the meaning of "wholly successful on the merits."

Defendants also point out that Colorado mandates indemnification only for officers and directors, and that plaintiff Bowman was neither. However, § 7–109–107(1)(b), C.R.S. 2000, provides that a corporation may indemnify employees to the same extent as directors; and GNC has done so here in § 8.3 of its bylaws, quoted above, which extends mandatory indemnification to employees as well as directors and officers.

Finally, we reject defendants' additional argument that plaintiffs are not entitled to mandatory indemnification because they were not sued "as" officers or directors of GNC.

Sections 7–109–103 and 7–109–107, read together, provide for mandatory indemnification for defendants who were made parties to a proceeding because they were, or had been, directors, officers, or employees of the corporation. The GNC bylaws similarly mandate indemnification in situations where employees or officers were made parties to a proceeding "by reason of the fact" that they were or had been an officer or employee of the corporation. In the underlying litigation here, plaintiffs were sued for breaches of loyalty and fiduciary duties because, or by reason of the fact that, they had been employees of GNIC.

We thus conclude that plaintiffs are eligible for mandatory indemnification under the GNC corporate documents and Colorado law. In light of our resolution of this issue, we do not reach plaintiffs' arguments regarding the bylaws of LAIC, an Oklahoma corporation, and the Oklahoma indemnification statutes.

### B.

We next consider whether, even though plaintiffs were "wholly successful" and thus eligible for mandatory indemnification, such indemnification is nevertheless prohibited in the circumstances of this case by other statutory or contractual provisions or by public policy.

While a corporation may grant indemnification rights broader than those provided by statute, such rights may not be inconsistent with the scope of the corporation's power to indemnify, as delineated in the statute's substantive provisions. *Waltuch v. Conticommodity Services, Inc., supra.*

Sections 7–109–102 and 7–109–107(1)(b), C.R.S.2000, permit a corporation to indemnify directors, officers, and employees in certain circumstances, and prohibit indemnification in other circumstances. The GNC charter and bylaws include provisions permitting or prohibiting indemnification in substantially the same situations as those set forth in § 7–109–102.

As relevant here, § 7–109–102 provides:

(1) Except as provided in subsection (4) of this section, a corporation may indemnify a person made a party to a proceeding because a person is or was a director against liability incurred in the proceeding if:

(a) the person conducted himself or herself in good faith; and

(b) the person reasonably believed

(I) in the case of conduct in an official capacity with the corporation, that his or her conduct was in the corporation's best interests; and

(II) in all other cases, that his or her conduct was at least not opposed to the corporation's best interests.

. . . .

(4) A corporation may not indemnify a director under this section:

(a) In connection with a proceeding by or in the right of the corporation in which the director was adjudged liable to the corporation; or

(b) In connection with any other proceeding charging that the director derived an improper personal benefit, whether or not involving action in an official capacity, in which proceeding the director was adjudged liable on the basis that he or she derived an improper personal benefit.

Defendants contend that § 7–109–102 evidences the General Assembly's intent not to permit indemnification for wrongdoers and supports their argument that public policy requires deterring, not rewarding, wrongful conduct. They also rely in support of their public policy argument on an introductory comment to the MBCA indemnification provisions which discusses policy concerns about indemnifying persons who intentionally inflict harm on their corporations. We conclude that neither § 7–109–102 nor the MBCA comment warrants precluding indemnification here in the name of public policy.

Consistent with the policy concerns addressed in the comment, the MBCA provision that corresponds to § 7–109–102(4)(b), C.R.S.2000, precludes a corporation from indemnifying a director not only in connection with any proceeding in which the director was "adjudged liable" but also "in proceed-ings by or in the right of the corporation, except for reasonable expenses . . . if it is determined that the director has met the relevant standard of conduct under subsection (a)"—that is, that the director acted in good faith and with a reasonable belief that his or her conduct was in the best interests of the corporation. *See Biondi v. Beekman Hill House Apartment Corp.*, 94 N.Y.2d 659, 709 N.Y.S.2d 861, 731 N.E.2d 577 (N.Y. 2000)(no indemnification for corporate director who breached fiduciary duty where New York statute and corporate bylaws prohibited indemnification for director who acted in bad faith).

■ Colorado, however, still retains the pre–1994 version of the MBCA, which does not prohibit indemnification of persons who failed to act in good faith or in the best interests of the corporation; rather, the statutory prohibition against indemnification in § 7–109–102 is limited to the situation in which the person seeking indemnification was "adjudged liable"—which, under § 7–109–104(4), means "obligated to pay." Although defendants urge us to define the term more broadly in order to further the public policy of deterring wrongful conduct, we are not free to ignore the language chosen by the General Assembly in determining what public policy requires. *See Biondi v. Beekman Hill House Apartment Corp., supra; see also Mayer v. Executive Telecard, Ltd.*, 705 A.2d 220 (Del.Ch.1997)(while sounder public policy might be to require corporation to pay fees incurred by director in vindicating his indemnification right, it was not the province of the court to create an entitlement that the legislature had elected not to provide).

■ Nor are we persuaded that we may decline, in the name of public policy, to give effect to the language chosen by defendants in their corporate documents and their severance agreement with plaintiff Waskel. As noted, § 7–109–103 permits a corporation to limit its mandatory indemnification obligation. However, a court should not impose such a limitation if, as here, the corporation has not done so. *See Barry v. Barry*, 824 F.Supp. 178 (D.Minn.1993)(where corporation did not opt out of Minnesota's statutory mandatory indemnification provisions, court

would give effect to statute entitling former directors to an advance of their legal expenses), *aff'd,* 28 F.3d 848 (8th Cir.1994).

In sum, we conclude that plaintiffs are eligible for mandatory indemnification and that neither public policy, Colorado law, nor the corporate documents prohibit indemnifying them in the circumstances presented here. Therefore, the trial court's entry of summary judgment in defendants' favor on their indemnification claims was error, and plaintiffs' motion for partial summary judgment on the issue should have been granted.

## II.

Plaintiffs also contend that the trial court erred in entering summary judgment on their malicious prosecution and outrageous conduct claims without allowing them to conduct additional discovery pursuant to C.R.C.P. 56(f). We disagree.

When a motion for summary judgment is made and supported as provided by C.R.C.P. 56, the opposing party's response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. C.R.C.P. 56(e).

C.R.C.P. 56(f) provides that a court may deny summary judgment or order a continuance to permit discovery if it appears from the opposing party's affidavits that the opposing party cannot for reasons stated present by affidavit facts essential to justify its opposition to summary judgment.

■■■ It is not an abuse of discretion to deny a C.R.C.P. 56(f) request if the movant has failed to demonstrate that the proposed additional discovery was necessary and could produce facts that would preclude summary judgment. *Sundheim v. Board of County Commissioners,* 904 P.2d 1337 (Colo.App. 1995), *aff'd,* 926 P.2d 545 (Colo.1996).

■■■ Here, defendants appended to their summary judgment motion a copy of the jury verdict form finding that plaintiffs had breached their fiduciary duties and duties of loyalty. Defendants argued that, as a matter of law, plaintiffs could not establish the elements of malicious prosecution or outrageous

conduct in light of the jury's finding in the prior action.

In response, plaintiffs simply asked for more time for discovery on these claims, supporting their request with an affidavit from plaintiff Waskel stating that he was "informed and believe[d]" that defendants brought the underlying case out of malice and with intent to harm plaintiffs, but that, without the opportunity to have discovery, he was unable to present facts essential to oppose summary judgment. The affidavit did not identify any specific discovery that would preclude summary judgment on these claims and did not explain why further inquiry regarding the factual basis for the claims had not been made before the action was filed.

We conclude that the affidavit did not demonstrate that any additional discovery could preclude summary judgment. Thus, denial of plaintiffs' C.R.C.P. 56(f) request would have been within the trial court's discretion. *See Sundheim v. Board of County Commissioners, supra.*

We further conclude that summary judgment was proper on these claims.

■■■ To prevail on a claim for malicious prosecution, which generally arises out of the institution of criminal proceedings, the plaintiff must establish, among other elements, the absence of probable cause for the complaint. *See Lounder v. Jacobs,* 119 Colo. 511, 205 P.2d 236 (1949); *CJI–Civ. 4th* 17:1 (1999). Here, the jury's finding that plaintiffs breached their duties to the corporations who filed the civil action demonstrates, as a matter of law, that the action was not brought without "probable cause"—that is, without a basis for believing that plaintiffs had engaged in actionable tortious conduct. *See CJI–Civ. 4th* 17:2 (1999).

■■■ To establish outrageous conduct, a plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Churchey v. Adolph Coors Co., supra,* 759 P.2d at 1350. In this case, no reasonable jury could find that either the filing of the previous lawsuit or the

refusal to indemnify rose to the level of outrageous conduct. Thus, summary judgment was proper on this claim as well.

The summary judgment in favor of defendants on plaintiffs' malicious prosecution and outrageous conduct claims is affirmed. The summary judgment in favor of defendants on the indemnification claims is reversed, and the cause is remanded for further proceedings in accordance with the views set forth here.

DAVIDSON and STERNBERG **, JJ., concur.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000