**In re INTERNET NAVIGATOR INC., Debtors.**

No. 01–02353.

United States Bankruptcy Court, N.D. Iowa.

April 22, 2003.

James H. Arenson, James E. Bennett, Dan Childers, Dennis Currell, Susan Daufeldt, Thomas G. McCuskey, Joseph A. Peiffer, H. Raymond Terpstra, II, Cedar Rapids, IA, Terry L. Gibson, Julie Johnson McLean, G. Mark Rice, Des Moines, IA, for Creditor.

John M. Titler, Cedar Rapids, IA, for Debtor.

### ORDER RE MOTION TO DETERMINE AMOUNT OF CLAIM OF BRADLEY & RILEY

PAUL J. KILBURG, Chief Judge.

This matter came before the undersigned on February 26, 2003. Claimant Bradley & Riley was represented by H. Raymond Terpstra II. Objector On Line Services, Inc. was represented by Thomas McCuskey. After hearing evidence and arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

## FACTUAL OVERVIEW

Internet Navigator, Inc. [hereinafter "INI"] was incorporated in Iowa. The directors began to disagree about management of the corporation. Three directors/shareholders eventually filed two lawsuits against the other three director/shareholders. In the first lawsuit, (Suit 1), the three shareholders, Glick, Lohff, and Walden, [hereinafter "Plaintiffs"] sued INI and the other director/shareholders Bennett, Letsche, and Elbert [hereinafter "Defendants"], for improper accounting methods and corporate practices, breach of fiduciary duty, and fraud. Bradley & Riley represented Defendants and INI in Suit 1, which ended in settlement and release of Plaintiffs' claims. As part of the settlement, INI confessed judgment to Plaintiffs. Plaintiffs then filed Suit 2, a derivative action. The Iowa District Court dismissed this suit as being duplicative of Suit 1, but not before Plaintiffs filed a motion to dismiss counsel. Bradley & Riley voluntarily ceased representation of INI in Suit 2.

INI failed to pay Plaintiffs under the Suit 1 settlement and eventually filed a Chapter 11 petition. By then, Plaintiffs had formed their own corporation, On–Line Services, Inc. [hereinafter "OLS"]. Plaintiffs assigned their claims to OLS. OLS and INI filed competing reorganization plans and this Court confirmed OLS' plan in January, 2003. *In re Internet Navigator, Inc.*, 289 B.R. 128, 133 (Bankr. N.D.Iowa 2003). Under OLS' plan, all creditors are to be paid in full. OLS objects to Bradley & Riley's claim for attorney's fees in its representation of INI and Defendants in both state court suits. A hearing on the validity of Bradley & Riley's claim was held on February 26, 2003.

## FINDINGS OF FACT

INI was founded as an Iowa corporation on June 20, 1995 and opened for business as an internet service provider in September, 1995. Its initial articles of incorporation provided for a four-member board of directors. The initial board consisted of Royce Bennett (45,000 shares), Michael Glick (45,000 shares), Terry Letsche (30,000 shares), and Von L. Elbert (30,000 shares). As part of INI's acquisition of IA Net, Inc., Geoffrey Lohff became a member of INI's board of directors in February, 1997. New stock was issued to Geoffrey Lohff (30,000 shares) and George Walden (7,500 shares).

Royce Bennett has been president of INI since 1995. Terry Letsche was vice-president from 1998–99. Michael Bell served on INI's board of directors from 1997–2001. On September 11, 1997, the Articles of Incorporation were amended to delete Section D, which allowed preemptive rights to stockholders.

Plaintiff Glick alleges that conflict first emerged among the board members in 1997 on the issue of preemption of shareholder rights. Beginning in June, 1998, Glick and Lohff repeatedly inquired into INI's financial records at board meetings. Glick testified via affidavit that he asked for Brad Hart's (INI's attorney and a partner at Bradley & Riley) assistance in obtaining copies of INI's financial records. According to Glick, Hart acknowledged his entitlement to the records but did not assist in their procurement. Glick later received some of the financial information in August, 1998.

Also in August, 1998, Glick, through counsel, contacted Brad Hart regarding the need to file suit on behalf of INI against other members of the board of directors. Hart stated that if Glick did wish to pursue the action, it would not be filed by his firm.

Glick testified that INI's Board of Directors instructed Hart to release the legal billing records for INI, but that other persons at Bradley & Riley repeatedly told Glick that the firm was in the middle of its billing cycle. Glick testified that he did not receive a copy of the corporate billing records until post-petition. Plaintiff Loehff also testified that Hart at one time notified him that he would receive the corporate billing records and later was denied the records.

Donald Thompson, Bradley & Riley's litigation counsel, notified James Bennett, attorney for Plaintiff Lohff, on January 6, 1999, that Bradley & Riley would provide him with a client ledger report for the fees billed to INI. Bradley & Riley believed that the actual itemized billing statements were protected by the attorney-client privilege.

On November 3, 1998, Plaintiffs Glick, Lohff, and Walden filed suit in Iowa District Court against INI and Defendants Bennett, Letsche, and Elbert. The initial claim sought the administrative dissolution of INI and complained that Defendants (a) improperly eliminated preemptive rights, (b) improperly booked approximately $110,000 in debt to INI, (c) improperly diluted Plaintiffs' percentage interests, (d) failed to give Plaintiffs access to INI corporate records, (e) breached their fiduciary duty, and (f) committed fraud. Plaintiffs Lohff and Walden also claimed breach of fiduciary duty in regard to Defendants' misrepresentation of INI's financial condition in connection with the issuance of their shares. Count III of the petition claimed entitlement to INI's financial records.

Because of their concerns regarding director mismanagement, Plaintiffs applied for an injunction or appointment of an auditor/receiver on November 17, 1998. On November 18, 1998, the Linn County District Court granted the injunction. Hearing on the appointment of an auditor/receiver was initially set for December 7, 1998, and then reset for December 21, 1998 and ultimately for January 14, 1999.

Bennett approached Bradley & Riley to represent all Defendants in this action ("Suit 1"). Bradley & Riley met with each Defendant and disclosed the potential for conflict of interest. The record contains the disclosure forms, but only one of the documents is signed by a Defendant. Bradley & Riley disclosed that (a) it was retained by INI to represent all Defendants, (b) while it did not appear there was any conflict of interest among the Defendants, there was that potential, (c) each Defendant must be willing to permit Bradley & Riley to disclose any information obtained from one Defendant to all other Defendants, (d) INI had the right to object to Bradley & Riley's continuing representation for any reason, including a perceived conflict, and (e) each Defendant had to consent to Bradley & Riley's continued representation.

On January 14, 1999, Plaintiffs released their claims against the individual Defendants, Bennett, Letsche, and Elbert. The release included all claims, known or unknown, "both at law and in equity, arising or related in any way, directly or indirectly, to their relationship and association with the Plaintiffs ..." The Court approved the parties' written stipulation on January 15, 1999. The Order further provided that INI provide Plaintiffs with reasonable access to financial records.

Plaintiffs did not release their section 490.1330 claims against INI. Iowa Code section 490.1330 provides for a fair valuation (and accrued interest) of a dissenting shareholder's shares in a dissenter's rights action. The value of the Plaintiffs' stock remained the sole issue in Suit 1 until its settlement in 2000.

On February 18, 1999, INI moved for a protective order in regard to discovery of billing records. Plaintiffs sought access to INI's billing records on the grounds that the records were relevant to the valuation of their shares. On February 26, 1999, the Iowa District Court sustained INI's motion for a protective order regarding customer names, addresses, telephone and circuit identification numbers, and fee statements of Defendant's counsel. Upon Plaintiff's motion to reconsider the order, the court, on April 13, 1999, ordered an in camera inspection of Bradley & Riley's itemized statements of fees to ascertain which portions were covered by the attorney/client privilege.

On the same day that INI filed its Motion for Protective Order, Plaintiffs filed another lawsuit, EQCV034675 ("Suit 2"). Plaintiffs, on behalf of INI, alleged breach of fiduciary duty by the Defendants, specifically citing (a) Defendants allowing the corporation to be administratively dissolved in 1997 and 1998, (b) Defendants' failure to pay Iowa sales tax when due, (c) Defendants' failure to comply with Iowa law regarding the elimination of preemptive rights, (d) Defendants' failure to provide Plaintiffs with INI documentation as requested, (e) Defendants' wasting of corporate assets, (f) Defendants' usurping of corporate opportunities for their own gain, and (g) Defendants' improper accounting practices. Plaintiffs also alleged negligence in performance of Defendants' duties as officers. Bennett, on behalf of INI, again retained Bradley & Riley to represent all named Defendants in this action. Bradley & Riley, after reviewing Plaintiff's claims and concluding they were without merit, disclosed potential conflict issues and obtained each Defendant's consent to representation.

INI moved for summary judgment in Suit 2 on April 2, 1999, claiming that the release in Suit 1 barred Plaintiffs' claims. Glick believed that a conflict of interest existed between Bradley & Riley and INI. In Suit 2, Plaintiffs, for the first time, filed a Motion to Disqualify Counsel on April 21, 1999, citing conflict of interest between the corporation and individual Defendants. On June 2, 1999, Glick moved at a special meeting of INI's board of directors to retain new legal counsel. Glick's motion failed.

Bradley & Riley filed a motion to withdraw as counsel on June 17, 1999. The court sustained the motion on July 1, 1999.

The parties argued the summary judgment motion in Suit 2 in January, 2000. The Iowa District Court granted summary judgment on March 10, 2000. The court declared that Plaintiffs did not meet the Iowa exception that a shareholder has an individual cause of action if the harm to the corporation also damaged shareholders individually. Shareholders must show that the third party owed them a special duty. The Iowa District Court held that Plaintiffs did not do so in Suit 1 and therefore the release barred Suit 2.

In May, 2000 Plaintiff Glick and INI entered into a settlement agreement, known by the parties as the "Settlement and Mutual Release Agreement." This document dismissed Glick's appeal of both Suit 1 and Suit 2. Glick dismissed his Suit 1 claim with prejudice on June 9, 2000. In return, INI was to make settlement payments by March 17, 2001. INI did not do so, and Glick sued for breach of the agreement on April 23, 2001 (Suit 3).

After Plaintiff Glick filed Suit 3, INI and Glick entered into a Standstill Agreement, whereupon INI agreed to enter a confession of judgment upon the surrender of Glick's stock. INI confessed judgment to Glick as follows:

a. $225,000 for his stock in INI

b. Eight percent interest beginning January 1, 1999 through the date of filing of this Confession of Judgment.

c. $67,500 for Glick's expenses.

Plaintiffs Lohff and Walden settled with INI in September, 2000. They agreed to dismiss their appeals in both Suit 1 and Suit 2. Lohff and Walden dismissed their Suit 1 claims with prejudice on October 2, 2000. Unable to make payment under the settlement agreement, INI entered a Verified Confession of Judgment and Statement of Indebtedness on March 22, 2001. INI conceded that it was indebted to Lohff and Walden for money due in the following amounts:

a. $150,000 to Plaintiff Lohff

b. $37,500 to Plaintiff Walden

c. Eight percent interest per year beginning on January 1, 1999, through the date of filing of this Confession of Judgment, as computed by the Clerk of Court; and

d. $128,250 for expenses.

The court approved the confession of judgment on March 28, 2001. Unable to raise money to pay any of these obligations, INI filed for bankruptcy protection on June 29, 2001. Bradley & Riley filed its proof of claim on June 18, 2002, claiming $201,449.00 in attorney's fees.

On January 22, 2003, the Bankruptcy Court for the Northern District of Iowa approved a plan for reorganization by OLS. OLS asserts that Bradley & Riley's claim for legal services should not be allowed. It argues the amounts claimed due arise from Bradley & Riley's representation of the individual Defendants, rather than INI. OLS does not object to $25,083.64 that INI owes Bradley & Riley for general corporate work. According to Bradley & Riley, of the remaining amounts owed, $20,295.44 was incurred by INI as a result of the derivative action (Suit 2) and

$160,518.52 was incurred by INI as a result of the Shareholder suit (Suit 1).

## EVIDENTIARY STANDARD

■ A claim filed under 11 U.S.C. § 501 that comports with the procedural requirements of Bankruptcy Rule 3001 is prima facie evidence of the validity and amount of such claim. *In re Roberts,* 210 B.R. 325, 328 (Bankr.N.D.Iowa 1997); Fed. R. Bankr.P. 3001(f). Unless a party in interest objects to the claim it is deemed allowed. 11 U.S.C. § 502(a). If an objection to the claim is made, the court, after notice and a hearing, must determine the amount of the claim fixed as of the date of the petition. 11 U.S.C. § 502(b). With some enumerated exceptions, the validity of and defenses to such a claim are to be determined under state law. 11 U.S.C. § 502(b)(1); *In re Hinkley,* 58 B.R. 339, 348 (Bankr.S.D.Tex.1986).

■ Bankruptcy Rule 3001(f) places the burden of producing sufficient evidence to rebut the presumption of validity on the objecting party. *In re Waterman,* 248 B.R. 567, 570 (8th Cir. BAP 2000). Once this burden of production is met, the ultimate burden of persuasion as to the allowability of the claim resides with the creditor. *Id.* In this case, OLS, the proponent of the confirmed plan, objects to Bradley & Riley's proof of claim. OLS bears the initial burden of producing evidence to rebut the presumptive validity of Bradley & Riley's claim.

## STATEMENT OF THE ISSUES

OLS' claims are essentially threefold; 1) that the amount of Bradley & Riley's claim is incorrect, 2) that payment to Bradley & Riley is prohibited by Iowa Code sections 490.853, 490.855, and *Rowen v. LeMars Mut. Ins. Co.,* 230 N.W.2d 905 (Iowa 1975), and 3) Bradley & Riley must be denied

payment pursuant to Iowa Code section 490.852. Bradley & Riley claim that Iowa Code section 490.852 compels the payment of the attorney's fees in this case.

OLS argues that the precise amount of the claim remaining due is unclear, mainly due to characterizations on INI's profit and loss statements and balance sheets. Testimony was offered at trial by both parties regarding the discrepancies in reporting actual losses and gains arising from accrual accounting methods. In the joint pre-trial statement, OLS acknowledged that it did not dispute the amount of Bradley & Riley's claim. OLS now seems to challenge the amount paid to Bradley & Riley by INI based on the profit and loss statements. This argument is without merit. Bradley & Riley introduced as evidence INI's balance sheet as of September, 2001. The balance sheet matches Bradley & Riley's proof of claim filed on June 18, 2002. OLS has not met its burden to rebut the presumptive validity of Bradley & Riley's claim in this regard.

## EFFECT OF REORGANIZATION PLAN ON PAYMENT OF CLAIM

Under 11 U.S.C. § 507(a), administrative expenses allowed under Section 503(b) have priority in payment. Attorney's fees rendered after the commencement of a case qualify for this priority. 11 U.S.C. § 503(b)(1)(A). It is unclear from Bradley & Riley's invoices if any of the work it performed was after the commencement of the bankruptcy case. However, it is unnecessary to determine which of Bradley & Riley's fees were incurred after commencement because under the approved reorganization plan, all claims are to be paid in full.

## AUTHORITY TO CONTRACT ON BEHALF OF A CORPORATION

■ OLS' primary objection is that Defendant Bennett improperly retained Bradley & Riley on behalf of INI in Suits 1 and 2. OLS claims that proper corporate procedures were not followed in the retention of Bradley & Riley for INI given that the individuals who engaged Bradley & Riley were themselves the targets of the litigation.

OLS claims that defendants did not meet the requirements of Iowa Code sections 490.853 and 490.855. Section 490.853 conditionally permits a corporation to "pay for or reimburse the reasonable expenses incurred by a director who is a party to a proceeding." Defendants never incurred expenses in the state court litigation. Bradley & Riley invoiced INI after Plaintiffs dismissed their claims against the Defendants on January 14, 1999. INI then began paying Bradley & Riley in June, 1999. Since Defendants did not incur any expenses, Iowa Code section 490.853 is not applicable.

Iowa Code section 490.855 relates back to section 490.851. Iowa Code section 490.851 conditionally authorizes a corporation to indemnify an individual who was made a party to a proceeding because the individual is or was a director. Section 490.855 outlines procedural requirements for director indemnification pursuant to 490.851. Section 490.855 mandates that any decision to indemnify pursuant to 490.851 must be made by a majority vote of a quorum consisting of directors not at the time parties to the proceeding. Only one board member, Michael Bell, was not a party in these proceedings. Defendants cannot use 490.855 as the basis for indemnification. Section 490.855 is not the basis for Bradley & Riley's claim.

■ OLS suggested at trial that INI's president, Royce Bennett, hired Bradley & Riley in violation of INI's Bylaws. Iowa law provides that:

[t]he office of president in itself confers no power to bind the corporation, but his power must be obtained from the articles of incorporation or a delegation of authority, directly or through the board of directors, expressly made or implied from the custom of doing business.

*Ney v. Eastern Iowa Tel. Co.,* 162 Iowa 525, 144 N.W. 383, 385 (1913).

■ In this case, INI's Bylaws expressly delegate the power to make contracts to its president. INI's Bylaws provide that "the president is the principle executive officer and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation." INI Bylaws, Section 4.4. In addition, INI's Bylaws expressly provide that its

[p]resident, with the secretary or any other proper officer authorized by the Board of Directors, has the authority to sign contracts, except in cases where the signing and execution is expressly delegated to INI's board of directors, the bylaws delegate the power to some other officer or agent, or the law requires the contract to be otherwise signed or executed.

INI Bylaws, Section 4.4.

There is no INI bylaw that expressly delegates the authority to retain counsel for litigation to an entity other than the president. Nor is there any other Iowa law to the contrary. Since Bradley & Riley already performed general corporate work for INI, Defendant Bennett orally retained Bradley & Riley to represent Defendants and INI. While there was no written contract to this effect, each written consent signed by Defendants acknowledged the dual representation and potential conflicts of interest. (Bradley & Riley Exhibits 8 and 18).

The issue here is the effect of the nature of the litigation. INI president Royce Bennett, on behalf of INI, contracted with Bradley & Riley for representation in litigation in which his conduct as president and director was at issue. OLS argues that Bradley & Riley's dual representation of both INI and the Defendants constituted a conflict of interest and as such, Bradley & Riley should be denied payment.

Suit 1 was labeled a derivative suit by Judge Hibbs when she awarded summary judgment in favor of Defendants in Suit 2 on March 10, 2000. In doing so, Judge Hibbs characterized Suit 2 as duplicative of Suit 1, where plaintiffs signed a release of claims in exchange for a settlement. Until Judge Hibbs' order for summary judgment in Suit 2, the parties classified Suit 1 as a dissenters' rights suit. Hibbs relied on *Cunningham v. Kartridg Pak Co.,* 332 N.W.2d 881, 883 (Iowa 1983), which held that any action by shareholders against the corporation or its directors is a derivative action unless the shareholder pleads specific harm in his or her individual capacity.

■ A derivative action is a unique judicial device by which those who hold the public franchise may seek redress in behalf of the corporation for wrongs done to it. *Rowen v. LeMars Mut. Ins. Co.,* 230 N.W.2d 905, 916 (Iowa 1975). In a derivative action, the corporation is a nominal defendant and should take a strictly neutral part. *State ex rel. Weede v. Bechtel,* 244 Iowa 785, 56 N.W.2d 173, 200 (1952); *Holden v. Construction Mach. Co.,* 202 N.W.2d 348, 367 (Iowa 1972). Shareholders in a derivative action seek recovery on behalf of the corporation, with any recovery awarded to the corporation. *Meyer v. Fleming,* 327 U.S. 161, 167, 66 S.Ct. 382, 90 L.Ed. 595 (1946); *Holi-Rest, Inc. v. Treloar,* 217 N.W.2d 517, 523 (Iowa 1974); 18 C.J.S *Corporations* § 397 (1990); Comment, *Independent Representation for*

*Corporate Defendants in Derivative Suits,* 74 Yale L.J. 524 (1965)[hereinafter "Independent Representation in Derivative Suits"].

██ OLS is correct in noting that when a president, who can make decisions on behalf of a corporation, is also the defendant in a suit brought on behalf of the corporation, a potential conflict of interests is present. *Rowen,* 230 N.W.2d at 914. This potential conflict of interest is enough to disqualify counsel. *Id.* In *Rowen,* the Iowa Supreme Court noted that there was "considerable force" in the law firm's argument that disqualification should await some inquiry into the merits of the action. *Id.* at 915. The *Rowen* court was concerned that if the action is without merit, the expense of independent counsel for the corporation would be unjustified. *Id.* But the court noted that fair inquiry into the merits of the claim may be prevented unless the corporation is represented at the outset by independent counsel. *Id.* Ultimately, the interests of the stockholders are better protected by requiring independent counsel, as it will assure that the merits of the action will not be obscured by a conflict of interest of corporate counsel. *Id.* This benefit justifies the cost. *Id.*

In Suit 1, the shareholders did not plead specific harm, so the action would seem to be derivative, yet the corporation did not receive any benefit. This litigation was only deemed derivative ex post-facto by the court. If this action was a derivative action, then Bradley & Riley could have been disqualified upon request by plaintiffs before the conclusion of the litigation under *Rowen.* Plaintiffs never petitioned for disqualification to the court during Suit 1 and when plaintiffs did so during Suit 2, Bradley & Riley voluntarily withdrew representation.

██ Because of the length of the delay by Plaintiffs before moving to disqualify Bradley & Riley, the Court will examine its standing to now raise the issue. Disqualification of counsel is an equitable remedy which may be barred by laches. *Kluht v. Mitchell,* 199 Iowa 1163, 199 N.W. 294, 295 (1924) (reversing a denial to hear a motion to disqualify counsel made at the outset of trial, as objecting attorney gave notice of intent to do so). The Seventh Circuit Court of Appeals has stated that "[t]he motion to disqualify counsel should be filed at the infancy of the litigation to rectify the evils of dual representation and to escape the bar of laches". *Cannon v. U.S. Acoustics, Corp.,* 398 F.Supp. 209, 213 n. 2 (N.D.Ill.1975), *aff'd in part, rev'd in part,* 532 F.2d 1118 (7th Cir.1976).

██ When a party delays for several years before motioning for disqualification, courts are less likely to grant the motion. *Marco v. Dulles,* 169 F.Supp. 622, 632 (S.D.N.Y.), *appeal dismissed,* 268 F.2d 192 (2d Cir.1959), *overruled on other grounds,* 496 F.2d 800, 806 (2d Cir.1974)(noting that motions to disqualify counsel are equitable in nature and should be made with "promptness and reasonable diligence after the facts become known to it," and thus rejecting a motion to disqualify counsel submitted more than 20 years after the cause of action was initiated). A motion for disqualification filed four years into a suit has also been denied. *Milone v. English,* 306 F.2d 814, 818 (D.C.Cir.1962) (rejecting, based upon *Marco v. Dulles,* a motion to disqualify counsel made four years after litigation commenced and after the settlement decree in a labor dispute).

Finding the bright line for "infancy" of the litigation becomes more difficult as the length of the delay decreases. One court has permitted a three-year delay when coupled with a lack of prejudice to the non-moving party. *Emle Indus. Inc. v. Paten-*

*tex, Inc.,* 478 F.2d 562, 574 (2d Cir.1973). Courts take different positions when the motion is filed close to the one year mark. *See Lewis v. Shaffer Stores Co.,* 218 F.Supp. 238, 239 (S.D.N.Y.1963) (denying a motion to disqualify counsel for conflict of interest in a derivative suit because plaintiff delayed for almost a year before making such motion); *Earl Scheib, Inc. v. Superior Court for Los Angeles County,* 253 Cal.App.2d 703, 61 Cal.Rptr. 386, 390 (1967) (distinguishing *Milone v. English* and *Marco v. Dulles* and allowing a motion to disqualify counsel in a conflict of interest case where motion was filed less than one year after answer of the complaint by the firm). *See also Independent Representation in Derivative Suits, supra,* at 527, Henry Lee, *Derivative Actions–Rowen v. LeMars Mutual Insurance Co.— Disqualification of Corporate Counsel and Appointment of Independent Counsel,* 2 J. Corp. L. 174, 178 n. 34 (1976).

While many factors can have an impact when considering a delayed motion to disqualify counsel, this Court does not feel it necessary to further examine the facts in this case. The parties have not cited and this Court is aware of no case that has dealt with disqualification of counsel *after* a case has been settled. The reason is obvious. It defies logic that a court would grant this equitable right at such a late date. The parties agreed to a mutually beneficial resolution of the dispute. To reopen the suit by allowing disqualification would be to void the settlement. In this case, Plaintiffs do not challenge the validity of the settlement; they seek to benefit from it while attacking the means by which they obtained it.

 It is only because OLS is now required to pay Bradley & Riley that this issue is before the court. It is the conclusion of this Court that the time has passed for OLS to claim disqualification of Brad-

ley & Riley. In accepting the confession of judgment, Plaintiffs implicitly acknowledged INI's liabilities. This conclusion is consistent with the long-standing principle that "[e]quity aids the vigilant and not those who slumber on their rights". *Ramiller v. Ramiller,* 236 Iowa 323, 332, 18 N.W.2d 622, 626 (1945); *Willow Tree Invs. Inc. v. Wilhelm,* 465 N.W.2d 849, 850 (Iowa 1991).

Even if all of the foregoing were not applicable, the denial of Bradley & Riley's fees, in total or in part, does not necessarily follow. Disqualification at any point does not equate to a denial of fees. In *Rowen,* the Supreme Court of Iowa declined to enjoin payment of any fees for services that the corporation had incurred. *Rowen,* 230 N.W.2d at 916. Additionally, while it is true that trustees have a panoply of powers above that of a debtor, in this case no innocent party is harmed by the payment of Bradley & Riley's claim. See 11 U.S.C. § 544(b); *In re Fordu,* 209 B.R. 854, 863 (6th Cir. BAP 1997). For these reasons, the Court will allow Bradley & Riley's proof of claim to be paid under the confirmed Chapter 11 plan.

## INDEMNIFICATION OF DIRECTORS

 Even if OLS had not waived arguments for disqualifying Bradley & Riley, on review of the entire record, the Court finds that Defendants were wholly successful on the merits in Suits 1 and 2. As such, INI, and OLS as its successor, are compelled to pay the directors' legal fees pursuant to Iowa Code section 490.852. Section 490.852 reads:

Unless limited by its articles of incorporation, a corporation shall indemnify a director who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the director was a party because the director is or was a director of the corporation against

reasonable expenses incurred by the director in connection with the proceeding.

Defendants are either present or former directors of INI and OLS does not assert that Defendants' expenses were unreasonable. Normally, the defendant/director would make the claim for indemnification. *See e.g., Rudebeck v. Paulson,* 612 N.W.2d 450 (Minn.Ct.App.2000), *Sherman v. American Water Heater Co.,* 50 S.W.3d 455 (Tenn.Ct.App.2001). While Defendants are not claiming indemnification directly, they do so de facto through Bradley & Riley, as payment of indemnification will be remitted to the firm. The result would be the same even if a different firm represented Defendants.

OLS argues that Defendants did not adhere to INI's Bylaws regarding indemnification of officers. Iowa Code section 490.852 mandates indemnification unless limited by a corporation's articles of incorporation. INI's articles of incorporation do not limit the scope of Iowa Code section 490.852. Article VII(B) of INI's Articles of Incorporation state that

> [i]f the Iowa Business Corporation Act is amended after the effective date of these Articles to authorize the further elimination of limitation of the liability of directors, then the liability of directors shall be eliminated to the full extent authorized by the Iowa Business Corporation Act, as so amended.

Iowa Code section 490.852 was in effect at the time INI's Bylaws were created. Acts 1989 (73 G.A.) Ch. 288, § 100, eff. Dec. 31, 1989. Article VII(B) incorporates any future changes under the Iowa Business Incorporation Act regarding director liability into INI's Articles of Incorporation. This implies that INI did not intend to deviate from Iowa law in regard to director liability. Hence, INI's Articles of Incorporation do not limit Iowa Code section 490.852.

INI's Bylaws also include a section on director indemnification. Section 5.1 of INI's Bylaws proscribes a means by which an INI director may secure indemnification. In order for a director to obtain indemnification against any liability incurred in a legal proceeding, the board of directors must make a determination that the director met the standards of conduct within Section 5.1. Section 5.1 is not applicable here because Defendants did not incur any liability.

█ Section 490.852 of the Iowa Code was adopted from § 8.52 of the Model Business Corporation Act ("MBCA"). The purpose of statutes such as § 8.52 is to ensure that capable persons serve as officers, directors, employees, or agents of corporations by assuring that their reasonable legal expenses will be paid. *Model Business Corp. Act* § 8.52 cmt.(1984) (amended 1994), *cited in* American Bar Association, *Changes in the Model Business Corporation Act—Amendments Pertaining to Indemnification and Advancements for Expenses,* 49 Bus. Law. 741, 749 (1994) [hereinafter *Changes in Model Act*]; *Mayer v. Executive Telecard Ltd.,* 705 A.2d 220, 222 (Del.Ch.1997).

The official comment to MBCA § 8.52 states that a defendant is " 'wholly successful' only if the entire proceeding is disposed of on a basis which does not involve a finding of liability." *Model Business Corp. Act* § 8.52 cmt. (1984) (amended 1994), *cited in Changes in Model Act, supra,* at 763. "Liability" under the Iowa Code and the MBCA, is defined as the "obligation to pay a judgment, settlement, penalty, fine, including an excise tax assessed with respect to an employee benefit plan, or reasonable expenses incurred with respect to a proceeding." Iowa Code § 490.850(4); *Model Bus. Corp. Act.* § 8.50(5) (1984) (amended 1994). The comment to MBCA § 8.52 also notes that

procedural defenses not related the merits qualify as "wholly successful". *Model Bus. Corp. Act* § 8.52 cmt. (1984)(amended 1994), *cited in Changes in Model Act, supra*, at 763; *Sherman*, 50 S.W.3d at 461.

Moreover, the term "wholly successful" was added to deal with instances where a defendant was successful on some of the counts, or partially successful. This was a rejection of the state of Delaware's allowance for indemnification upon some, but not all, of the claims. *Model Bus. Corp. Act* § 8.52 cmt. (1984) (amended 1994), *cited in Changes in Model Act, supra*, at 763; *Merritt–Chapman & Scott Corp. v. Wolfson*, 321 A.2d 138 (Del.Super.Ct.1974); *Waskel v. Guaranty Nat'l Corp.*, 23 P.3d 1214, 1219 (Colo.Ct.App.2000).

When interpreting state statutes based on MCBA § 8.52, courts have held that being "wholly successful or otherwise" is dependent upon payment of a money judgment in the underlying litigation. *Waskel*, 23 P.3d at 1219; *Waltuch v. Conticommodity Serv., Inc.*, 88 F.3d 87, 95–96 (2d Cir. 1996), *Safeway Stores, Inc. v. National Union Fire Ins. Co.*, 64 F.3d 1282, 1289–90 (9th Cir.1995) (holding that directors who admitted no liability and paid no money as part of the settlement were "successful" and thus entitled to mandatory indemnification).

Dismissal and settlement or dismissal with prejudice also constitute "wholly successful." *Sherman*, 50 S.W.3d at 461 (holding that an officer that obtained dismissal of suit via settlement and did not incur any liability was "successful on the merits or otherwise" and therefore entitled to mandatory indemnification); *Wisener v. Air Express Int'l Corp.*, 583 F.2d 579, 583 (2d Cir.1978) (holding that "success on the merits or otherwise" is broad enough to cover a termination of claims by agreement without any payment or assumption of liability); *Galdi v. Berg*, 359 F.Supp.

698, 701 (D.Del.1973) (holding that dismissal without prejudice did not fall within 8 Del.C. § 145(c)); *B & B Inv. Club v. Kleinert's Inc.*, 472 F.Supp. 787, 790 (E.D.Pa.1979).

Courts also do not make a distinction between the defense of suits brought by third parties and suits brought by or on behalf of the corporation. *Waskel*, 23 P.3d at 1219; *MCI Telecomm. Corp. v. Wanzer*, 1990 WL 91100, *8 (Del.Super.).

█ Lastly, the term "wholly successful" has nothing to do with moral exoneration. The only requirement is escape from adverse judgment. *Waskel*, 23 P.3d at 1219 (noting that the indemnification-seeking party's lack of good faith is irrelevant to a "wholly successful" inquiry); *Waltuch*, 88 F.3d at 96, *Landmark Land Co. v. Cone*, 76 F.3d 553, 567 (4th Cir.1996); *Fleischer v. Fed. Deposit Ins. Corp.*, 1998 WL 351572, *2 (D.Kan.).

In this case, plaintiffs dismissed their claims against Defendants in Suit 1. Summary judgment was awarded in Defendants' favor in Suit 2. Defendants were sued in their capacity as directors of INI and did not incur any personal liability. Contrary to OLS' assertion that defendants confessed judgment, it was INI that confessed judgment. While OLS' expert testified that the directors are de facto the corporation and therefore liable, this is not a correct statement of the law. Plaintiffs accepted the settlement and released Defendants from any liability. As such, Defendants were "wholly successful". This Court concludes that no showing has been made by OLS which allows it to avoid payment of its claim under the approved Chapter 11 Plan.

**WHEREFORE,** OLS has not met its burden under Bankruptcy Rule 3001(f). Bradley & Riley's claim is valid.

**FURTHER,** Bradley & Riley's claim in the amount of $201,449 is to be paid under the approved reorganization plan.

**SO ORDERED** this 22nd day of April, 2003.