COLORADO COURT OF APPEALS
 2016 COA 08

 
 

 Court of Appeals No. 15CA0466
Industrial Claim Appeals Office of the State of Colorado
WC No. 4-897-030-02

 Misty Keel, individually and as guardian ad litem of Riley Cooper Keel, dependents of John Eric Keel,
 Petitioners,
 v.
 Industrial Claim Appeals Office of the State of Colorado, Transportation Technology Services, and Ace American Insurance Company,
 Respondents.

 ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS
 Division VI
Opinion by JUDGE BERNARD
Terry and Nieto*, JJ., concur
 Announced January 14, 2016

 Killian David Richter & Mayle, PC, J. Keith Killian, Erin C. Burke, Grand Junction, Colorado, for Petitioners
 No Appearance for Respondent Industrial Claim Appeals Office
 Thomas Pollart & Miller, LLC, Eric J. Pollart, Tina R. Oestreich, Greenwood Village, Colorado, for Respondents Transportation Technology Services and Ace American Insurance Company
 *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.
 
 
 ¶1         A worker, John Eric Keel, lived in Mississippi, where he had a job working for an employer, Transportation Technology Services. (The employer’s insurer, Ace American Insurance Company, is aligned with the employer’s interests in this case. We shall therefore refer to the employer and the insurer cumulatively as “the employer.”)
 ¶2         At the employer’s request, the worker transferred to Colorado to work. He was killed in a workplace accident in Pueblo. The worker’s family — his wife, Mindy Keel, and their minor son, Riley Cooper Keel — are the claimants in this case.
 ¶3         When workers who live in other states die on the job in Colorado, our Workers’ Compensation Act sets out a test to determine whether their families will receive death benefits in this state. An administrative law judge — an “AUJ” in legal parlance — in Colorado decided that this test had been satisfied in the worker’s case.
 ¶4         This appeal asks us to decide a question that arises out of the award of death benefits under that test: What is the effect of workers’ compensation death benefit payments in other states on the interest paid on past due Colorado death benefits?
 ¶5         We conclude that the answer is found in section 8-42-114, C.R.S. 2015. As is pertinent to this appeal, this statute describes a particular circumstance and the statutory response to it. The circumstance concerns “cases where it is determined that periodic death benefits granted by the federal . . . survivors . . . insurance act or a workers’ compensation act of another state . . . are payable to . . . [an] individual’s dependents.” The response to the circumstance is that “aggregate benefits payable for death . . . shall be reduced . . . by an amount equal to fifty percent of such periodic benefits.”
 ¶6         Section 8-42-114 controls our decision in this case: the worker’s case presents the circumstance described in the statute, so we must respond as the statute directs. Consequently, we further conclude that a Panel of the Industrial Claim Appeals Office applied the wrong test when it declined to apply section 8-42-114. As a result, it awarded the claimants less interest than the pertinent statute required.
 ¶7         We reverse the Panel’s order. We remand the case to the Panel to remand it, in turn, to the AUJ to recalculate the interest on the past due death benefits in Colorado in the manner that we describe in this opinion and to order the employer to pay that sum to the claimants.
 I. Background
 ¶8         In March 2010, the worker took a job with the employer in Mississippi, where he lived with the claimants. In October 2010, the employer offered the worker a job in Pueblo for a lot more money. The worker took the job. He was killed in a workplace accident on the second day that he worked in Pueblo.
 ¶9         A short time later, the employer started paying the claimants workers’ compensation death benefits in Mississippi — $337.58 per week — and the Social Security Administration started paying them survivor benefits — $380.77 per week.
 ¶10         The claimants applied for death benefits under Colorado’s Workers’ Compensation Act in 2012. In April 2013, an AUJ decided that (1) “Colorado ha[d] jurisdiction” over their claim; and (2) the employer’s insurer “was liable [to the claimants] for death benefits” under the Workers’ Compensation Act. See §§ 8-42-114 & 8-42-121, C.R.S. 2015. But the AUJ did not decide how much money the employer should pay as a continuing future death benefit, whether the employer owed any past due death benefit payments, or whether the employer should pay any interest on any past due death benefits. The AUJ wrote that these issues were “for future determination.”
 ¶11         The employer had paid the claimants’ death benefits in Mississippi for 148 weeks, from the day after the worker died, October 28, 2010, until August 28, 2013. It stopped paying benefits in Mississippi on that latter date, and it began to pay benefits in Colorado. During those 148 weeks, the insurer paid the claimants a total of $49,961.84.
 ¶12         If the employer was obligated to pay the claimants’ benefits in Colorado from the day after the worker died, then what was the effect of the 148 weeks of Mississippi payments and the ongoing Social Security survivor benefits on the employer’s Colorado obligation? The employer offered its answer to this question in an amended general admission that it filed in mid-September 2013.
 ¶13         First, the admission stated that the maximum Colorado weekly death benefit would be $810.67.
 ¶14         Second, apparently following section 8-42-114, the employer wrote that it was entitled to two offsets. One offset was “[f]ifty percent of all benefits paid to date under the laws of the State of Mississippi, in the amount of $168.79 per week from the date of the incident to the date of this filing.” The second offset was “Social Security [survivor benefits] in the amount of $190.38 per week from the date of the incident forward.”
 ¶15         Third, keeping these offsets in mind, the employer calculated the continuing future benefit that it would be obligated to pay the claimants by deducting one-half of the on-going Social Security survivor benefit, or $190.38 per week, from $810.67 to arrive at an adjusted continuing benefit figure of $620.29. (We note that there is no disagreement about this continuing benefit figure and that it is not at issue in this appeal.)
 ¶16         Fourth, the employer turned to calculating the “admitted [Colorado past due] death benefits” for the 148-week period between the worker’s death and the date when it began to pay benefits in Colorado. The employer determined that one half of the Mississippi weekly benefit of $337.58 was $168.79. Subtracting this amount from the adjusted Colorado benefit of $620.29, the employer calculated that it owed the claimants’ a weekly past death benefit of $451.50 for the 148-week period. Multiplying the weekly figure by the number of weeks, the employer arrived at a past due death benefit figure of $66,822.
 ¶17         The employer paid the claimants this amount. (We know this because the claimants have said so several times in documents filed in the course of this case, including the opening brief in this appeal, and during oral argument. The employer has never contested these statements.)
 ¶18         Now we zero in on the crux of this appeal. The employer also had to determine the interest that it owed the claimants on the past due death benefit. The statutory rate was eight percent. See § 8­43-410(2), C.R.S. 2015. The employer stated in the amended general admission that it owed the claimants an additional $2040.32 in interest. But the employer did not make clear how it had reached that figure.
 ¶19         The claimants filed a motion for summary judgment. As is pertinent to this appeal, they contended that the employer had significantly miscalculated the interest due on the past due death benefits.
 ¶20         The employer offered clarification later in a cross-motion for summary judgment, most directly in an affidavit attached to the cross-motion that was completed by a claims representative. It asserted that the total of the Mississippi payments — $49,961.84 — should be subtracted from the total of the Colorado past due death benefits — $66,822 — to reach a total figure of $16,860.16 that the employer owed the claimants. Then the employer used this last figure to calculate the interest on the Colorado past due death benefits.
 ¶21         The AUJ agreed with employer’s reasoning and calculations. She ordered the employer to pay the claimants the interest that employer had listed in the general admission.
 ¶22         The claimants sought review. A Panel of the Industrial Claim Appeals Office disagreed with the AUJ’s interest calculations. It held that section 8-42-114 did not apply to the Colorado past due death benefits that the employer owed to the claimants because the claimants’ Mississippi death benefits, which employer “timely paid for the period of October 28, 2010, through August 28, 2013, actually were subsumed by or converted to Colorado workers’ compensation benefits.” The Panel therefore held that the claimants were not entitled “to collect the full aggregate amount of workers’ compensation benefits from two applicable states.” This meant, the Panel explained, that the claimants were not “entitled to recover $116,783.84,” or the sum of the Colorado past due death benefits that the employer paid — $66,822 — and the full Mississippi death benefit — $49,961.84.
 ¶23         The Panel decided that it would calculate the interest that the employer owed the claimants on the Colorado past due death benefit in the following way. It initially decided that, for the 148-week period during which Mississippi paid the claimants’ death benefits, they were entitled to Colorado benefits of $91,902.92, or 148 weeks multiplied by $620.29 — the weekly Colorado benefit minus the offset for the Social Security survivors’ benefit. It then subtracted all the Mississippi death benefits that the claimants had actually received — $49,961.84 — from the $91,902.92 figure. This left a figure of $41,841.08 on which the employer was obligated to pay interest.
 ¶24         The Panel remanded the case to the AUJ to enter an order on the interest. The AUJ, following the Panel’s direction, ordered the employer to pay the statutory eight percent interest on $41,841.08. The claimants again sought review.
 ¶25         The Panel affirmed the ALJ’s order. In doing so, it expanded on its reasoning. Citing section 8-42-114, it concluded that the claimants were “not entitled to recover full Colorado death benefits minus only 50% of the Mississippi benefits . . . because there is now no award from another state that is ‘payable’” to the claimants.
 II. Analysis
 ¶26         We first make clear what the scope of this appeal is. As indicated above, the employer has already paid the claimants $66,822, and it does not want any of that money back. It made clear in the response brief that it filed before the Panel issued its first order that it was not asking for any of it. Because Mississippi law did not “provide a recovery mechanism for overpaid benefits,” (1) the employer was not “able to recover the $49,961.84 in [death] benefits” that it had paid “under Mississippi law”; and (2) it “had . . . elect[ed] to take the 50 percent offset for those benefits under Colorado law.”
 ¶27         So, as we stated above, the only issue before us is: What is the effect of workers’ compensation death benefit payments in other states on the interest paid on past due Colorado death benefits?
 A. Section 8-42-114
 ¶28         The claimants contend that the Panel erred when it concluded that section 8-42-114 did not apply to the interest calculation in this case. We agree.
 1. Standard of Review and General Legal Principles
 ¶29         We review an ALJ’s or a Panel’s conclusions of law de novo. Colo. Dep’t of Labor & Emp’t v. Esser, 30 P.3d 189, 193 (Colo. 2001). This appeal asks us to determine what the language of section 8-42-114 means. Statutory interpretation is also an issue of law that we review de novo. Id. at 194.
 ¶30         When we interpret a provision of the Workers’ Compensation Act, we give it its “plain and ordinary meaning” if its language is clear. Davison v. Indus. Claim Appeals Office, 84 P.3d 1023, 1029 (Colo. 2004). “[W]hen examining a statute’s plain language, we give effect to every word and render none superfluous because ‘[w]e do not presume that the legislature used language “idly and with no intent that meaning should be given to its language[.]”’” Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist., 109 P.3d 585, 597 (Colo. 2005)(citation omitted)(quoting Carlson v. Ferris, 85 P.3d 504, 509 (Colo. 2003), superseded in part by statute on other grounds as recognized by St. Jude’s Co. v. Roaring Fork Club, LLC, 2015 CO 51 ¶17).
 ¶31         It is our function to decide these issues of law, including the interpretation of statutes. El Paso Cty. Bd. of Equalization v. Craddock, 850 P.2d 702, 705 (Colo. 1993)(“An administrative agency’s construction [of a statute] should be given appropriate deference, but is not binding on the court.”). We defer to an agency’s interpretation of its governing statute if the statute is subject to different reasonable interpretations and the issue comes within the administrative agency’s special expertise. Huddleston v. Grand Cty. Bd. of Equalization, 913 P.2d 15, 17 (Colo. 1996).
 2. Application of Legal Principles
 ¶32         We conclude that the language of section 8-42-114 is clear, so we give it its plain and ordinary meaning. See Davison, 84 P.3d at 1029. We give all its words effect and we render none superfluous. See Colo. Water Conservation Bd., 109 P.3d at 597. We conclude that, because we can readily give the words that the legislature used their full effect, the legislature meant what it said. We will therefore apply section 8-42-114 as the legislature wrote it. See State v. Nieto, 993 P.2d 493, 500 (Colo. 2000).
 ¶33         Section 8-42-114 begins, as is pertinent here, with a categorical statement: “In case of death, the dependents of the deceased entitled thereto shall receive . . . death benefits . . . .” (Emphasis added.) In other words, because the worker died in Colorado, once the Colorado AUJ determined that “Colorado ha[d] jurisdiction” over the claim, the employer “was liable [to the claimants] for death benefits” under the Workers’ Compensation Act. The employer has not questioned this ruling.
 ¶34         Then, as we have indicated above, we conclude that section 8-42-114 sets forth a circumstance and a response to the circumstance. It states:

 If “it is determined that periodic death benefits granted by the federal . . . survivors . . . insurance act or a workers’ compensation act of another state . . . are payable to an individual and the individual’s dependents”
 then “the aggregate benefits payable for death pursuant to this section shall be reduced, but not below zero, by an amount equal to fifty percent of such periodic benefits.”

 ¶35         We next apply section 8-42-114 to the facts of this case. The claimants received federal survivors’ death benefits and Mississippi workers’ compensation benefits. We therefore conclude that section 8-42-114 means that the past due death benefits that the employer owed the claimants in Colorado must be calculated by determining the weekly Colorado benefit. The claimants and the employer agree that it would be $810.67.
 ¶36         But section 8-42-114 requires that we reduce this amount by two things: fifty percent of the claimants’ Social Security survivors’ benefit, or $190.38 per week, and fifty percent of the weekly Mississippi workers’ compensation payments, or $168.79. Subtracting these figures, we arrive at a weekly past death benefit figure of $451.50. Multiplying this figure by 148 weeks, or the length of time that the employer paid weekly workers’ compensation death benefits in Mississippi, we reach a Colorado past due death benefit figure of $66,822. (We note that this was the same methodology that the employer used to reach the same figure in the amended general admission.)
 ¶37         Turning to section 8-43-410(2), we conclude that the claimants are entitled to eight percent interest on this past due death benefit figure of $66,822.
 ¶38         So, unlike the Panel, we have concluded that section 8-42-114 applies to this case and that its application is clear. Giving the Panel appropriate deference, we nonetheless recognize that its reasoning and conclusions do not bind us. See Craddock, 850 P.2d at 704. We conclude that we should not defer to the Panel’s position because the language of section 8-42-114 is not subject to different reasonable interpretations. We also conclude that, because we cannot find a reason in the Workers’ Compensation Act, in Colorado case law, or in the record to stray from the statute’s plain language and the legislature’s clear intent, we are in as good a position as the Panel to interpret section 8-42-114. See Huddleston, 913 P.2d at 17. We next proceed to explain why we respectfully disagree with the Panel’s reasoning, which was based primarily based on policy considerations.
 B. The Panel’s Policy Considerations
 The Panel decided that death benefits were not “payable” in Mississippi; they were “subsumed” by the benefits payable in Colorado; and the claimants were not entitled to the aggregate benefit of the Mississippi death benefits and the Colorado past due death benefits. We disagree for the following reasons. First, benefits were paid in Mississippi. The record contains a document from the Mississippi Workers’ Compensation Commission. It states in part that, as of January 11, 2011, “payment of compensation for temporary total disability has begun and will continue until further notice.” The claimants, the employer, the ALJ, and the Panel all agree that these benefits were paid. And there is nothing in section 8-42-114 that directs us, suggests to us, or even allows us, to look behind these payments to determine whether these benefits were paid because the employer wanted to pay them or because Mississippi law required the employer to pay them.
 The Panel’s reliance on the Full Faith and Credit Clause is misplaced. As a general rule, “[t]he Full Faith and Credit Clause protects the final judgments of one state from collateral attack in another state.” McClure v. JP Morgan Chase Bank NA, 2015 COA 117, ¶26.
 But, in Thomas v. Wash. Gas Light Co., 448 U.S. 261, 286 (1980), the Supreme Court held that the Full Faith and Credit Clause was not violated if two states granted a worker successive compensation awards. In reaching its conclusion, the Court observed that the industrial commission of one state does not have the authority to bar recovery of benefits in another state because “[t]ypically, a workmen’s compensation tribunal may only apply its own State’s law.” Id. at 282-83. Rather, if more than one state has jurisdiction over a workers’ compensation claim, a claimant can seek successive awards from those different states without concern that the Full Faith and Credit Clause would bar the additional recovery.
 ¶39         Applying Thomas’s reasoning here, we conclude that it undercuts the Panel’s rationale. It means that the Panel only had the authority to “apply [Colorado’s workers’ compensation] law,” see id., meaning section 8-42-114, and not Mississippi’s workers’ compensation law. And it means that, absent a Colorado statute saying otherwise, the claimants could seek successive awards from Mississippi and Colorado. See Thomas, 448 U.S. at 283.
 ¶40         Second, the Panel did not cite any Colorado legal authority to support its conclusions that (1) the claimants were not entitled “to collect the full aggregate amount of workers’ compensation benefits from two applicable states”; and (2) the claimants’ “Mississippi death benefits . . . were subsumed by or converted to Colorado workers’ compensation benefits.” Section 8-42-114 does not make any such statement; there are no other statutes in the Workers’ Compensation Act that make any such statement; and Colorado case law does not make any such statement.
 ¶41         But, third, the Panel cited out-of-state cases to support its conclusions. These cases held that an employer could be granted an offset for benefits awarded under another state’s workers’ compensation scheme. Mississippi, for example, gives an offset of one hundred per cent for benefits paid by another state. See Southland Supply Co. v. Patrick, 397 So. 2d 77, 79 (Miss. 1981). But, as Thomas points out, such out-of-state law does not bind us under the Full Faith and Credit Clause. Thomas, 448 U.S. at 282­83. And, even more to the point, section 8-42-114 grants the employer a fifty percent offset for the Mississippi death benefits that it paid. So, although the amount of the offset is different, the employer nonetheless received the offset that Colorado law allowed.
 ¶42         Fourth, the Panel’s reading of the statute would render it empty. The Panel’s reasoning means that benefits would never be “payable” under another state’s workers’ compensation system. Instead, all out-of-state benefits would be “subsumed by and converted to” Colorado benefits. In turn, if all out-of-state awards are “subsumed by and converted to” Colorado awards, then section 8-42-114 would never apply.
 ¶43         We cannot endorse such a reading of this statute because it would render parts of it meaningless and without effect. See USF Distrib. Servs. Inc. v. Indus. Claim Appeals Office, 111 P.3d 529, 532 (Colo. App. 2004)(“An interpretation that renders a particular clause meaningless and without effect is to be avoided.”). And we cannot insert language that would additionally qualify when and how death benefits are to be offset. Kraus v. Artcraft Sign Co., 710 P.2d 480, 482 (Colo. 1985)(Neither this court nor the Panel may “read nonexistent provisions” into the Workers’ Compensation Act.).
 ¶44         Fifth, the Panel was concerned that the claimants might receive a windfall, a “double recovery with no reduction of any sort in the cost of the claim for the employer.” But this concern was clearly not implicated in this case. In the amended general admission, the employer used section 8-42-114 to offset the past due death benefit by subtracting one-half of the claimants’ weekly Social Security survivor benefits and one-half of Mississippi’s weekly workers’ compensation benefits. So the claimants did not receive a “double recovery,” and the employer received the “reduction . . . in the cost of the claim” required by Colorado law.
 ¶45         Sixth, the Panel thought that applying section 8-42-114 would encourage a claimant who might receive death benefits in two states to “creatively time” a claim in a way designed to maximize benefits. In this case, for example, the Panel thought that the claimants took advantage of the differences in offsets of death benefits paid by the two states — Mississippi’s one hundred percent offset versus Colorado’s fifty percent offset. If they had first filed in Colorado instead of Mississippi, their Mississippi past death benefit payments would have been offset by one hundred percent of their Colorado death benefits.
 ¶46         But, to the extent that the claimants may have had the opportunity to receive more benefits by engaging in such tactics, it is not up to us to amend the statute to prevent such an additional recovery. That is the legislature’s prerogative. See Nelson v. City of New York, 352 U.S. 103, 111 (1956)(“[R]elief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts, unless some constitutional guarantee is infringed.”); People v. Cooper, 27 P.3d 348, 360 (Colo. 2001)(“[I]t is not the role of the courts to rewrite or eliminate clear and unambiguous statutes merely because they do not believe the General Assembly would have intended the consequences of its enactments.”); Bunch v. Indus. Claim Appeals Office, 148 P.3d 381, 385 (Colo. App. 2006)(“Claimant’s arguments that the [Workers’ Compensation] Act is unfair or that the result is contrary to public policy amount to a request for a change of statutory law. Absent constitutional infringement, it is not our province to rewrite statutes.”); Waskel v. Guar. Nat’l Corp., 23 P.3d 1214, 1221 (Colo. App. 2000)(“Although defendants urge us to define the term more broadly in order to further the public policy of deterring wrongful conduct, we are not free to ignore the language chosen by the General Assembly in determining what public policy requires.”).
 ¶47         Last, the Panel asserted that one of the statute’s goals — encouraging claimants to seek Social Security survivor benefits by “exacting a 50% reduction” of the Social Security benefits — was not similarly achieved by applying a fifty percent offset to benefits from another state. But, again, this is a policy argument best addressed to the legislature. See Nelson, 352 U.S. at 111; Cooper, 27 P.3d at 360; Bunch, 148 P.3d at 385; Waskel, 23 P.3d at 1221. 
 ¶48         The Panel’s order is reversed. The case is remanded to the Panel with directions that the Panel remand the case to the ALJ. The ALJ shall then order the employer to pay the claimants eight percent interest on the past due death benefits figure of $66,822.
 JUDGE TERRY and JUDGE NIETO concur.
 
These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here.