The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 17, 2021

## 2021COA83

**No. 20CA1475, *Browne v. ICAO* — Labor and Industry — Workers' Compensation — Benefits — Limits on Temporary and Permanent Partial Disability Payments — Effect of Previous Injury or Compensation**

A division of the court of appeals considers the relationship between section 8-42-107.5, C.R.S. 2020 (capping disability benefits based on an injured worker's "impairment rating"), and section 8-42-104(5)(a), C.R.S. 2020 (apportioning benefits for successive injuries to the same body part), of the Workers' Compensation Act. The division concludes that the applicable statutory disability cap is determined not by combining, but by separately calculating, the "impairment ratings" for each injury.

COLORADO COURT OF APPEALS          **2021COA83**

---

Court of Appeals No. 20CA1475
Industrial Claim Appeals Office of the State of Colorado
WC No. 5034884

---

Timothy Browne,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and City of Colorado Springs, Colorado,

Respondents.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE DAILEY
Freyre and Yun, JJ., concur

Announced June 17, 2021

---

Franklin D. Azar & Associates, P.C., Robert Turner, Colorado Springs, Colorado; The Elliott Law Offices, P.C., Mark D. Elliott, Alonit Katzman, Arvada, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Dworkin, Chambers, Williams, York, Benson & Evans, P.C., Gregory K. Chambers, Denver, Colorado, for Respondent City of Colorado Springs

The McCarthy Law Firm, P.C., John D. McCarthy, Arvada, Colorado, for Amicus Curiae Colorado Workers' Compensation Education Association

¶ 1　　The Workers' Compensation Act (Act) limits the amount of temporary and permanent partial disability benefits awardable to an injured worker, depending upon an injured worker's "impairment rating." § 8-42-107.5, C.R.S. 2020.  In 2016, when this claimant's benefits were calculated, for injuries sustained with impairment ratings of 25% or less, temporary and permanent disability benefits were capped at $86,697.04; for injuries sustained with impairment ratings greater than 25%, temporary and permanent disability benefits were capped at $173,391.90.[1]

¶ 2　　What happens when a worker suffers multiple, compensable work-related injuries that cumulatively — but not individually — produce an impairment rating greater than 25% to the same body part?

---

[1] These figures ($86,697.04 and $173,391.90) are not found in section 8-42-107.5, C.R.S. 2020; other figures are.  But that provision instructs the director of the Division of Workers' Compensation (division) to adjust the disability caps annually "by the percentage of adjustment made by the director to the state average weekly wage pursuant to section 8-47-106[, C.R.S. 2020]."  § 8-42-107.5.  The date of a claimant's injury determines which benefits caps will apply.  The parties on appeal, as well as the Industrial Claim Appeals Office (Panel) and the administrative law judge (ALJ), agree that $86,697.04 and $173,391.90 accurately represent the lower and higher benefits cap numbers for injuries sustained in 2016.

¶ 3 The Act mandates an apportionment between injuries: "In cases of permanent medical impairment," a claimant's award or settlement "shall be reduced" by "deduct[ing] from the permanent medical impairment rating for [a] subsequent injury" the "permanent medical impairment rating[s] applicable to the previous injur[ies] to the same body part." § 8-42-104(5)(a), C.R.S. 2020.

¶ 4 The Act does not explicitly articulate how and when the reduced benefits via apportionment should be calculated. The present case asks us to resolve this question: Should the final apportioned impairment rating be calculated first, resulting in the application of the lesser benefits cap, or should the benefit be calculated based on the combined rating and then reduced by subtracting earlier awards?

¶ 5 Because we conclude that an apportioned "impairment rating" should be calculated first, we affirm the decision of the Panel upholding the order of an ALJ limiting the claim to the lower statutory benefits cap.

## I. Background

¶ 6 Claimant, Timothy Browne, worked as a law enforcement officer for the City of Colorado Springs (the City). In 2007, he

sustained an injury to his cervical spine "during defense tactic training." He reached maximum medical improvement (MMI) for that injury in January 2010 with a permanent impairment rating of 6% of the whole person but with no restrictions. The City admitted to the 6% injury and paid claimant permanent partial disability (PPD) benefits having a present value of $31,577.95 for the 2007 injury.

¶ 7    In July 2016, claimant sustained a second work-related injury to the same body part, his cervical spine. He reached MMI for this injury in April 2019. The City filed a final admission of liability (FAL) admitting to an impairment rating of 25% of the whole person based upon the treating physician's impairment rating calculation. Claimant underwent a division-sponsored independent medical examination (DIME). The DIME physician agreed with the treating physician that claimant reached MMI in April 2019, but the DIME physician calculated claimant's impairment rating to be 26% of the whole person.

¶ 8    The City did not file an FAL after the DIME physician issued his report. Instead, a dispute arose between the parties over the apportionment of claimant's injuries and application of the

statutory benefits cap. The City took the position that claimant's permanent impairment rating should first be reduced by the 6% impairment attributable to his 2007 injury, leaving him with a net permanent impairment rating of 20% and a disability benefits cap of $86,697.04 for the 2016 injury.

¶ 9    Claimant countered that the City's approach improperly reduced the disability benefits to which he was entitled; according to him, the statutory benefits cap should be based on the DIME physician's total impairment rating of 26%, from which the amount awarded to him for his 2007 injury should be deducted. Under claimant's analysis, the statutory benefits cap — based on an impairment rating of 26% — would be $173,391.90.

¶ 10    The ingredients and sequence of calculation matter. If, as the City argues, claimant's impairment rating is deducted first and the lower benefits cap applied, his resulting net PPD benefit is $30,763.47. But if, as claimant argues, the impairment rating is not deducted first and the award is based on the 26% impairment rating, the higher benefits cap would apply and claimant's net PPD benefit would total $85,880.38. Thus, if claimant's benefits are calculated based on the 20% apportioned impairment rating, he will

4

receive $55,116.91 less than he would if benefits are calculated based on the total 26% impairment rating.

¶ 11     An ALJ who heard the matter concluded that the statute's plain language supports the City's position: the impairment rating should be apportioned first.  The ALJ noted that section 8-42-104(5) specifies that "the permanent medical impairment rating" attributable to the older injury "shall be deducted from the permanent medical impairment rating" of the subsequent injury.  He reasoned that apportionment "is part of the process" used to determine the overall impairment rating attributable to a specific injury upon which the final award is ultimately based.

¶ 12     The Panel agreed with the ALJ's interpretation.  It noted that, contrary to claimant's proposed formula and in contrast to the statutory declaration to subtract the earlier impairment rating from the later injury's impairment rating, the Act does not specify the deduction of a previous award for a prior injury.  It found nothing in the Act authorizing such a calculation.  It therefore affirmed the ALJ's PPD award of $30,763.47 to claimant.

¶ 13     On appeal, claimant asserts that the Panel and the ALJ misinterpreted the Act.  He raises two primary contentions: (1) the

5

plain meaning of the Act mandates that the disability benefits cap be based on total, combined impairment ratings; and (2) interpreting the Act to apportion an impairment rating before applying the benefits cap facially violates the Fourteenth Amendment's guarantee of equal protection under the law because those with impairment ratings of 26% or more from a single injury receive greater benefits than those with combined impairment ratings from multiple injuries that collectively exceed 25%. For the reasons discussed below, we are not persuaded by claimant's arguments.

## II. *The Panel Correctly Interpreted The Act*

¶ 14    Claimant first contends that to harmonize the Act's provisions and adhere to the words' plain meaning, the statutory disability cap should be applied to his combined impairment rating of 26%. Although he concedes the City is entitled to an apportionment between injuries, he argues that (1) the cap must be determined, without regard to apportionment, "as part of the award"; and (2) any apportionment must be taken later. According to him, apportionment (1) "simply explains how to calculate the appropriate offset" after the initial award has been determined; and (2) is

6

accomplished by deducting from the initial award the amount of disability benefits previously awarded in connection with the prior injury.

¶ 15    Adhering to this sequence in the calculation, claimant asserts, achieves both the goal of preventing double recovery and the beneficent purpose of the Act because it would not block claimants from "accessing the second cap of benefits."

¶ 16    We disagree with claimant's reading of the Act.

### A.    Standard of Review and Rules of Statutory Construction

¶ 17    We review issues of statutory construction de novo. *Ray v. Indus. Claim Appeals Off.*, 124 P.3d 891, 893 (Colo. App. 2005), *aff'd*, 145 P.3d 661 (Colo. 2006). Consequently, we are not bound by the Panel's interpretation of the Act or the Panel's earlier decisions. *Olivas-Soto v. Indus. Claim Appeals Off.*, 143 P.3d 1178, 1180 (Colo. App. 2006).

¶ 18    We interpret the Act "according to its plain and ordinary meaning." *Davison v. Indus. Claim Appeals Off.*, 84 P.3d 1023, 1029 (Colo. 2004). "[W]e give effect to every word and render none superfluous because we 'do not presume that the legislature used language idly and with no intent that meaning should be given to

its language.'" *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) (quoting *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo. 2005)). "If the statutory language is clear, we apply it as written." *Pinnacol Assurance v. Hoff*, 2016 CO 53, ¶ 48.

¶ 19 However, where an agency's governing statute is subject to different reasonable interpretations, we defer to the agency's interpretation. *Keel v. Indus. Claim Appeals Off.*, 2016 COA 8, ¶ 31; *see Rocky Mountain Cardiology v. Indus. Claim Appeals Off.*, 94 P.3d 1182, 1184-85 (Colo. App. 2004) (noting that an administrative agency's interpretation of its governing statute will be set aside "only if it is inconsistent with the clear language of the statute or with the legislative intent").

## B. *Relevant Statutory Provisions*

¶ 20 We are concerned here with the interpretation of two statutes: section 8-42-107.5 and section 8-42-104(5).

¶ 21 Section 8-42-107.5 places a cap on the amount of combined temporary and permanent disability benefits a claimant can receive. It divides claims into two categories: (1) those for injuries with an impairment rating of "twenty-five percent or less" and (2) those for

injuries with an impairment rating "greater than twenty-five percent." § 8-42-107.5. The former are subject to a lower benefits cap than the latter. The statute provides:

> No claimant whose impairment rating is twenty-five percent or less may receive more than[, as applicable here, $86,697.04] from combined temporary disability payments and permanent partial disability payments. No claimant whose impairment rating is greater than twenty-five percent may receive more than[, as applicable here, $173,391.90] from combined temporary disability payments and permanent partial disability payments. . . .

*Id.*

¶ 22 Section 8-42-104(5) — which applies when a claimant has sustained multiple injuries to the same body part — mandates that the permanent impairment rating from the first injury must be subtracted from any permanent impairment rating assigned after the second, or subsequent, injury. The relevant portions of section 8-42-104 provide:

> (1) The fact that an employee has suffered a previous disability or impairment or received compensation therefor shall not preclude compensation for a later injury or for death . . . .
>
> . . . .

(3) An employee's temporary total disability, temporary partial disability, or medical benefits shall not be reduced based on a previous injury.

. . . .

(5) In cases of permanent medical impairment, the employee's award or settlement *shall be reduced*:

(a) When an employee has suffered more than one permanent medical impairment to the same body part and has received an award or settlement under the [Act] or a similar act from another state. *The permanent medical impairment rating applicable to the previous injury* to the same body part, established by award or settlement, *shall be deducted from the permanent medical impairment rating for the subsequent injury* to the same body part.

*Id.* (emphasis added).

### C.   Analysis

*1.   The Apportionment Provision is Clear and Unambiguous*

¶ 23    Section 8-42-104(5) permits the apportionment of a disability between multiple injuries. It unequivocally states that, as between successive injuries to the same body part, apportionment is accomplished by subtracting the "permanent medical impairment rating" attributable to a claimant's previous injury from the "permanent medical impairment rating" assigned to a claimant after

10

any subsequent injury. § 8-42-104(5). Contrary to claimant's assertion, nothing in section 8-42-104(5) or any other provision in the Act authorizes apportionment based on the deduction of a previous monetary award from a later one.

¶ 24     Because "[i]n interpreting a statute, we must accept the General Assembly's choice of language," we cannot "add or imply words that simply are not there." *State v. Medved*, 2019 CO 1, ¶ 19 (quoting *People v. Diaz*, 2015 CO 28, ¶ 15); *see Kraus v. Artcraft Sign Co.*, 710 P.2d 480, 482 (Colo. 1985) ("We have uniformly held that a court should not read nonexistent provisions into the Colorado Work[ers'] Compensation Act."). Had the General Assembly wanted the Act to authorize apportionment by, as claimant wishes, subtracting a prior award from a subsequent one, it could have "written the statute to reflect that outcome." *Munoz v. Am. Fam. Mut. Ins. Co.*, 2018 CO 68, ¶ 13. But it didn't: it based apportionment solely on a consideration of "permanent medical impairment rating[s]."

¶ 25     Because section 8-42-104(5) plainly and unambiguously states that a claimant's prior "impairment rating" must be deducted when apportioning a prior injury, we must adhere to this statutory

11

mandate and apportion claimant's impairment rating by deducting the 6% attributable to his 2007 injury from the 26% impairment rating he received after his 2016 work injury.[2]  Under section 8-42-104(5)'s mandate, this results in an impairment rating of 20% attributable to claimant's 2016 injury.

### 2.     *Determining the Applicable Benefits Cap*

¶ 26     The statutory disability benefits cap, section 8-42-107.5, is similarly clear.  It sets a lower cap for injuries resulting in impairment ratings of 25% or less, and a higher cap for more serious injuries that result in impairment ratings of 26% or higher.

¶ 27     But what is the applicable "permanent medical impairment rating," for purposes of determining which of the two benefits caps applies in section 8-42-107.5?  Is it, as claimant argues, the "total" or "cumulative" impairment rating resulting from multiple injuries to the same body part?  Or is it, as the City argues, simply the

---

[2] This, by the way, has long been the practice in this state.  *See, e.g.*, *Colo. Fuel & Iron Corp. v. Rhodes*, 166 Colo. 82, 86, 441 P.2d 652, 654 (1968) (Apportionment is determined by "computing the percentage of entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.").

"permanent impairment" rating attributable to the current injury alone (as determined via the apportionment process)?

¶ 28    In support of his argument, claimant points out that despite numerous amendments to the apportionment statute, it has never been altered to specify how the benefits cap should be determined. While that's true, the legislature's silence does not answer the question posed.  With no express guidance from the legislature, it is equally likely that it intended claims to be apportioned first and the applicable benefits cap determined second.  We do not read the General Assembly's silence on this issue as making claimant's proposed interpretation more plausible.

¶ 29    Indeed, in our view the more plausible construction determines the statutory cap based on a previously apportioned impairment rating.

¶ 30    Apportionment recognizes that an injured worker is not barred from recovering for a work injury just because he may have previously suffered a compensable work-related injury.  *See Empire Oldsmobile, Inc. v. McLain*, 151 Colo. 510, 516, 379 P.2d 402, 405 (1963).  But it likewise protects employers from liability attaching from pre-existing or previous injuries.  *See, e.g., Lindner Chevrolet v.*

*Indus. Claim Appeals Off.*, 914 P.2d 496, 499 (Colo. App. 1995) (noting that the General Assembly "has accorded employers the protection of apportionment" for prior work-related injuries), *overruling recognized by Baldwin Constr. Inc. v. Indus. Claim Appeals Off.*, 937 P.2d 895, 897 (Colo. App. 1997). In practice, apportionment ensures that an employer is only liable for impairment resulting from the particular work injury. And that goal is accomplished by determining the impairment rating for the injury in question.

¶ 31 Indeed, this distinction becomes apparent when one considers that the disability benefits cap cannot be applied until a claimant's permanent impairment rating can be calculated.

¶ 32 Section 8-42-107.5 applies to permanent, not temporary, impairment ratings. Consequently, several divisions of this court have held the cap cannot be applied until a claimant has reached MMI and been awarded permanent disability benefits. *See United Airlines v. Indus. Claim Appeals Off.*, 2013 COA 48, ¶ 14 (determining that claimant whose temporary disability benefits exceeded the statutory cap did not have to repay any portion above the cap because she had not reached MMI and had not received any

14

permanent disability benefits); *Leprino Foods Co. v. Indus. Claim Appeals Off.*, 134 P.3d 475, 480 (Colo. App. 2005) ("[B]ecause MMI is a predicate to a determination of claimant's medical impairment rating, and claimant has not yet reached MMI, her permanent impairment rating cannot yet be determined. Accordingly, application of the cap is premature.") (citation omitted); *Donald B. Murphy Contractors, Inc. v. Indus. Claim Appeals Off.*, 916 P.2d 611, 613 (Colo. App. 1995) ("[O]nly after (1) the claimant reaches [MMI] and (2) his medical impairment rating is established can the applicability of [section] 8-42-107.5 be determined.").

¶ 33    A claimant whose impairment rating must be apportioned has, then, already reached MMI with respect to at least one prior injury, and the statutory cap would have been applied *to that previous award*. Applying the cap to a combined, rather than an apportioned, rating effectively caps that portion of the claim twice.

¶ 34    Apportioning a claim before applying the statutory cap avoids this scenario. When apportionment is taken first, the statutory cap limits the award for the permanent impairment rating attributable to each particular injury. Claimant received PPD benefits for his

2007 injury and was therefore already subject to the statutory cap for that injury.

¶ 35    Claimant, however, argues that because the precise language used in section 8-42-104(5) — "shall be reduced" — is found in sections 8-42-103 and 8-42-114, C.R.S. 2020, which mandate offsets for social security and unemployment benefits, apportionment must also work as an offset to a previously determined award.  But claimant's reasoning is flawed.

¶ 36    An offset is loosely defined as follows: "the noun 'offset' is defined as a contrary claim or demand by which a given claim may be lessened or canceled; and the verb 'offset' as meaning to balance; to cancel by contrary claims or sums; to counteract." *Lalime v. Desbiens*, 55 A.2d 121, 123 (Vt. 1947) (citation omitted).  Under the Act, apportionment is not an offset.  It is, as we explained above, a reduction in the *impairment rating* attributable to an injury.  It is not a reduction of any sum or monetary award.[3]

---

[3] Claimant's reliance on *Leprino Foods Co. v. Industrial Claim Appeals Office,* 134 P.3d 475 (Colo. App. 2005), for a contrary conclusion is misplaced.  *Leprino Foods* had nothing to do with apportionments; it held that no cap could apply until after a claimant had reached MMI but offered no guidance on when any apportionment should be computed.  *Id.* at 481.  Consequently, its

16

¶ 37    Nor does the Act's goal of preventing double recovery convince us to adopt claimant's proposed statutory interpretation. To be sure, preventing double recovery by claimants is "[a]n important policy of the" Act. *Colo. Comp. Ins. Auth. v. Jorgensen*, 992 P.2d 1156, 1165 (Colo. 2000). But determining the benefits cap based on a claimant's total or combined impairment rating does not achieve that goal unless, as claimant suggests, his prior award is deducted from his current claim benefit. And we have already determined that the Act does not expressly authorize such a calculation in place of apportioning a claimant's impairment rating.

¶ 38    Calculating a claimant's disability benefit based on a combined, instead of apportioned, impairment rating is duplicative in the sense that a claimant would receive a benefit award based on the earlier impairment rating — here, 6% — and a second award based on the earlier rating plus the later rating — here, a combined impairment rating of 26%. Further, in arguing to the contrary, claimant fails to acknowledge that an impairment rating is part of the calculation determining the final benefits sum to which a

---

description of benefits caps does not assist us in answering the questions posed here.

17

claimant is entitled and *directly* affects how much a claimant will recover. *See* §§ 8-42-106, -107(8)(d), C.R.S. 2020 (medical impairment disability benefits). Incorporating the 6% attributable to claimant's prior injury into the calculation of benefits awardable for his 2016 injury would necessarily result in that 6% being incorporated into the calculation of benefits twice: first in 2007 and again in 2016. Adding in the 6% impairment rating from his 2007 injury thus inflates his 2016 award, enabling him to recover more than just the benefit tied to the 2016 impairment.

¶ 39    As claimant also observes, the purpose of the statutory cap is "to create an overall savings in workers' compensation costs to employers while allowing a more generous award for levels of impairment exceeding twenty-five percent." *Rogan v. Indus. Claim Appeals Off.*, 91 P.3d 414, 416 (Colo. App. 2003). Certainly, then, permitting higher recoveries in cases of more serious injury is one goal of the statutory cap, but equally important are cost savings. Although claimant's *combined* impairment rating totals 26%, his rating with respect *to this injury* is only 20%. Applying the cap to the combined impairment rating would, in effect, award claimant benefits twice for the 6% impairment he suffered in his 2007 injury

because calculating benefits based on a 26% impairment rating necessarily incorporates the 6% impairment rating from the previous injury. Consequently, applying the benefits cap to the combined impairment rating frustrates the cost saving goal built into the Act. *See id.*

¶ 40 True, the Act "is intended to be 'remedial and beneficent in purpose, and should be liberally construed' in order to accomplish these goals." *Davison*, 84 P.3d at 1029 (quoting *Colo. Counties, Inc. v. Davis*, 801 P.2d 10, 11 (Colo. App. 1990)). But the beneficent goal arching over the Act does not trump an express provision of the Act. *Cf. Curran v. Progressive Northwestern Ins. Co.,* 29 P.3d 829, 833 (Alaska 2001) ("[P]ublic policy can guide statutory construction but cannot override a clear and unequivocal statutory requirement"). Consequently, although one of the Act's underlying goals is to generously compensate workers suffering more serious injuries with a higher benefit cap, we cannot ignore the Act's directive to apportion impairment derived from multiple injuries.

¶ 41 We conclude that the legislature's intent in imposing a statutory cap and also mandating apportionment of multiple claims arising out of injuries to the same body part is best achieved by

applying the cap to the apportioned impairment rating, as the Panel determined. Because the Panel's interpretation does not conflict with the legislative intent, it is "entitled to great weight." *Jiminez v. Indus. Claim Appeals Off.*, 51 P.3d 1090, 1093 (Colo. App. 2002). We therefore defer to it and adopt it. *See Keel*, ¶ 31.

¶ 42 Consequently, we perceive no error in the Panel's affirmance of the ALJ's order limiting claimant's recovery on this claim to the lower statutory benefits cap.

### III. *Equal Protection*

¶ 43 Claimant also contends that the Panel's interpretation violates his right to equal protection under the law. Specifically, he argues that it treats him differently from other injured workers. He asserts that applying the statutory benefits cap to an apportioned injury "would deny workers who receive a total rating of 26% or higher from two or more combined injuries the ability to reach the higher cap of benefits, but would allow those with just one injury of 26% or higher to reach the higher cap of benefits." We are not persuaded that the Panel's interpretation violates equal protection.

## A. Law Governing Equal Protection

¶ 44     As claimant concedes, "workers' compensation claimants are not a suspect class and . . . workers' compensation benefits are not a fundamental right.  The rational basis test therefore applies to equal protection challenges in the workers' compensation context, and claimant's constitutional challenge should be assessed under that standard."  *Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, ¶ 20 (citations omitted).

¶ 45     "Under the rational basis test, 'a statutory classification is presumed constitutional and does not violate equal protection unless it is proven beyond a reasonable doubt that the classification does not bear a rational relationship to a legitimate legislative purpose.'"  *Id.* at ¶ 21 (quoting *Pace Membership Warehouse v. Axelson*, 938 P.2d 504, 506 (Colo. 1997)).  Our review must be "especially deferential to legislative choice: '[S]o long as it is arguable that the other branch of government had [a rational] basis for creating the classification, a court should not invalidate the law.'"  *Culver v. Ace Elec.*, 971 P.2d 641, 646 (Colo. 1999) (quoting 2 Ronald D. Rotunda et al., *Treatise on Constitutional Law* § 18.3 (1986)).

21

¶ 46    "[T]he burden is on claimant, as the challenging party, to prove the statute is unconstitutional . . . ." *Pepper v. Indus. Claim Appeals Off.*, 131 P.3d 1137, 1139 (Colo. App. 2005), *aff'd on other grounds sub nom. City of Florence v. Pepper*, 145 P.3d 654 (Colo. 2006).

> The threshold question in an equal protection challenge is whether the legislation results in dissimilar treatment of similarly situated individuals.  To violate equal protection provisions, the classification must arbitrarily single out a group of persons for disparate treatment from other persons who are similarly situated.

*Peregoy v. Indus. Claim Appeals Off.*, 87 P.3d 261, 265 (Colo. App. 2004).

## B.    *Analysis*

¶ 47    Here, claimant's equal protection challenge rests on his assertion that all claimants with impairment ratings in excess of 25% are similarly situated and entitled to equal treatment under the law.  But they are not.  Claimant's impairment rating is the sum of his ratings from two different injuries.  Other claimants with impairment ratings greater than 25% suffered just one injury.

22

¶ 48    Sustaining two work-related injuries places claimant and other multiple-incident claimants in a different category from claimants who have sustained just one injury and results in a key distinction between the two groups: those claimants who have suffered a prior injury *received disability benefits for the prior injury* because those claimants were entitled to disability benefits based on that earlier permanent impairment rating.  *See* § 8-42-104(5); § 8-42-107; § 8-42-111, C.R.S. 2020.  In contrast, workers who sustained a single injury resulting in an impairment rating of 26% or more have not previously received any disability benefits.  The two groups are consequently not similarly situated.  Claimant therefore cannot meet his threshold burden of establishing that he was treated differently than other similarly situated claimants.  *See Peregoy*, 87 P.3d at 265.

¶ 49    Certainly, in some circumstances, all workers' compensation claimants have been lumped into the same category.  *See, e.g., Culver*, 971 P.2d at 646 ("For purposes of further analysis, we assume that all injured claimants are similarly situated."); *Sanchez*, ¶ 25 ("We therefore conclude that the class should be defined more narrowly as comprising all workers' compensation litigants, because

parties to workers' compensation actions are subject to different rules and a different statutory scheme than other litigants."). But even if we were to assume for the purposes of our analysis here that all workers' compensation claimants with impairment ratings greater than 25% are similarly situated, claimant still cannot meet his burden of establishing a constitutional violation.

¶ 50    Employing claimant's formula to ascertain benefits payable to multi-injury claimants necessarily results in basing benefits on the same impairment rating twice: (1) when calculating benefits for the previous injury; and (2) when adding the prior impairment rating to the rating obtained in the subsequent injury. As claimant's situation exemplifies, he received PPD benefits based on his 6% impairment rating for his 2007 injury. If we now calculate his award based on the combined rating of 26%, rather than apportioning first, benefits for the initial 6% rating would effectively be calculated twice and the resulting sum would be inflated by an additional 6% not attributable to the current injury. And that is a result at odds with the Act's goal of avoiding duplicative recoveries. *See Jorgensen*, 992 P.2d at 1165.

¶ 51    Nor was claimant actually deprived of access to a higher total award for his two injuries.  In 2007, his injury was subject to a $75,000 cap applicable to injuries with impairment ratings of 25% or less.  § 8-42-107.5, C.R.S. 2006.  He received $28,930.94 in disability benefits for that injury, but had his need been greater or his disability more extensive, up to $75,000 was available to him before reaching the statutory cap in place in 2007.  Importantly, the 2007 award is not tallied into the statutory cap for the 2016 injury; the 2016 injury is subject to its own statutory cap, which had increased to $86,697.04.  Thus, the maximum combined statutory caps available to claimant for his 2007 and 2016 injuries totals $161,697.04.  It is worth noting, too, that had claimant's 2007 injury been subject to the cap in place in 2016, he would have had available to him up to $173,394.08 for the two injuries.[4]  In that scenario, the combined caps from claimant's two injuries would thus *slightly exceed* the 2016 higher statutory cap of $173,391.90.  Consequently, we disagree that claimant suffered any deprivation at all.

---

[4] $86,697.04 x 2 = $173,394.08.

¶ 52    Also important to our equal protection analysis is the existence of a rational basis for any unequal treatment. To successfully plead an equal protection violation, claimant must establish the absence of a legitimate governmental interest in treating some workers with impairment ratings over 25% differently than others. He has not done so. Although claimant maintains that his treatment was unfair and unjustified, the supreme court has found financial grounds to be the basis for rational and legitimate legislative goals under the Act. The supreme court noted that there is

> a three-fold rational basis for the disparate treatment of [permanent total disability] claimants in comparison to [temporary partial disability], [temporary total disability], and [permanent partial disability] claimants to whom social security and employer-paid retirement benefits are payable after the person's sixty-fifth birthday. They include: maintaining the fiscal integrity of the workers' compensation system; allocating the fiscal burden equitably among funding sources; and controlling costs to employers while providing legislatively-intended benefits to injured workers. We agree that the offset provision has a rational basis.

*Culver*, 971 P.2d at 651-52. Similarly here, the goal of preventing inflated recoveries is a rational basis for the legislature to treat

26

claimants with one injury netting an impairment rating greater than 25% differently from claimants whose impairment rating of 26% or more was caused by multiple injuries to the same body part.

¶ 53 We therefore conclude that claimant has failed to establish that basing the statutory benefits cap on apportioned impairment ratings violates his right to equal protection under the law. *See Pepper*, 131 P.3d at 1139.

## IV. Disposition

¶ 54 The order is affirmed.

JUDGE FREYRE and JUDGE YUN concur.